**In re GRAND JURY SUBPOENA.**

**John DOE NO. 4, Respondent–Appellee,**

**v.**

**John DOE NO. 1, et al., Intervenors–Appellants.**

No. 897, Docket 96–6210.

United States Court of Appeals, Second Circuit.

Argued Oct. 7, 1996.

Decided Dec. 23, 1996.

---

James Ostrowski, Buffalo, NY, for Intervenors–Appellants.

Kathleen M. Mehltretter, Assistant United States Attorney, Buffalo, NY, for Appellee.

Before OAKES, ALTIMARI, and MAHONEY,* Circuit Judges.

OAKES, Senior Circuit Judge:

Intervenors–Appellants John Doe 1, et al., appeal from an oral order dated July 12, 1996, and later written order entered July 24, 1996, in the United States District Court for the Western District of New York, Richard J. Arcara, Judge, sealing all pleadings, memoranda, and proceedings related to this case. Appellants assert that three subsections of Fed.R.Crim.P. 6(e), as well as the First Amendment, are violated by the district court's order. We have jurisdiction under 28 U.S.C. § 1291 and the collateral order doctrine. *See Cohen v. Beneficial Industrial Loan Corp.*, 337 U.S. 541, 546–47, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949); *United States v. Klepfer (In re Herald Co.)*, 734 F.2d 93, 96 (2d Cir.1984) (*Cohen* applies to appeals from sealing orders). We affirm.

## I

### Facts

Because this case is sealed, our recitation of the facts is necessarily limited in scope. Essentially, the relevant circumstances are as follows:

Earlier this year, John Doe 4 (hereinafter Doe 4) was served with a grand jury subpoena duces tecum. Soon after, Doe 4 filed a motion in the District Court for the Western District of New York asserting that it had been the victim of illegal electronic surveillance by the government, and demanding that the government disclose any such surveillance pursuant to 18 U.S.C. §§ 2515 and 3504 and 50 U.S.C. § 1801. Upon learning

of Doe 4's motion and ascertaining that argument was to be heard on it, a representative of the press telephoned Judge Arcara's chambers and requested information about the hearing. She was told that it was closed to the public. Thereafter, members of the press, represented by John Doe 1, et al. (hereinafter Appellants), moved to intervene and access all pleadings and court proceedings on Doe 4's motion.

On July 12, 1996, Judge Arcara heard oral argument on Appellants' motion in a closed courtroom. Both Appellants and Doe 4 argued for an open hearing; the government argued in favor of closure. The court permitted Appellants to intervene, but denied the motion for access. Deeming Doe 4's motion to be related to a grand jury proceeding, Judge Arcara ordered all papers and pleadings on that motion sealed except as necessary for providing associated legal services, and closed the proceedings to the public. The order specifically did not prohibit Doe 4 from disclosing information about the subpoena duces tecum served upon it or from discussing any appearance it had made or might make before the grand jury. This immediate oral order was later reflected in the court's written order of July 24, 1996. Appellants appeal that order; the government is the Respondent. We review the issues of law related to the district court's closure order *de novo*. *United States v. Doe*, 63 F.3d 121, 125 (2d Cir.1995).

## II

### Discussion

Appellants assert that the district court's sealing order violates Federal Rule of Criminal Procedure 6(e)(2), (5), and (6), as well as the First Amendment. We disagree.

#### A. Federal Rule of Criminal Procedure 6(e)

##### 1. *Rule 6(e)(5) and (6)*

Appellants maintain that Rule 6(e)(5) and (6) is exceeded by the district court's order.

---

* The Honorable J. Daniel Mahoney, who was a member of the panel, died on October 23, 1996, and the appeal is being decided by the remaining two members of the panel, who are in agreement. *See* Local Rule § 0.14(b).

Rule 6(e)(5) provides "... the court shall order a hearing on matters affecting a grand jury proceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury." Rule 6(e)(6) states "[r]ecords, orders and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury."

We begin by emphasizing that " 'the proper functioning of our grand jury system depends upon the secrecy of grand jury proceedings.' " *United States v. Haller,* 837 F.2d 84, 87–88 (2d Cir.1988) (quoting *Douglas Oil Co. of California v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 1672, 60 L.Ed.2d 156 (1979)). We have repeatedly explicated the rationale for this policy:

> (1) To prevent the escape of those whose indictment may be contemplated; (2) to insure the utmost freedom to the grand jury in its deliberations, and to prevent persons subject to indictment or their friends from importuning the grand jurors; (3) to prevent subornation of perjury or tampering with the witnesses who may testify before the grand jury and later appear at the trial of those indicted by it; (4) to encourage free and untrammeled disclosures by persons who have information with respect to the commission of crimes; (5) to protect the innocent accused who is exonerated from disclosure of the fact that he has been under investigation, and from the expense of standing trial where there was no probability of guilt.

*United States v. Moten,* 582 F.2d 654, 662 (2d Cir.1978) (quoting *United States v. Amazon Industrial Chemical Corp.,* 55 F.2d 254, 261 (D.Md.1931) ("[i]t is obvious that the basis of all but the last of these reasons for secrecy is protection of the grand jury itself ... rather than of those brought before the grand jury.") and citing, *inter alia, United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82 n. 6, 78 S.Ct. 983, 986 n. 6, 2 L.Ed.2d 1077

(1958)); *see also United States v. Sells Eng'g Inc.,* 463 U.S. 418, 424, 103 S.Ct. 3133, 3138, 77 L.Ed.2d 743 (1983); *Douglas Oil,* 441 U.S. at 218–19, 99 S.Ct. at 1672–73; *Haller,* 837 F.2d at 88.

Rule 6(e) implements this policy of secrecy. *See* Fed.R.Crim.P. 6(e). The plain language of the Rule shows that Congress intended for its confidentiality provisions to cover matters beyond those actually occurring before the grand jury: Rule 6(e)(6) provides that all records, orders, and subpoenas *relating to* grand jury proceedings be sealed, not only actual grand jury materials; similarly, Rule 6(e)(5) refers to matters *affecting* a grand jury proceeding, not only the proceedings themselves. The pertinent question, therefore, is whether a particular proceeding is related to or affects a grand jury proceeding. The district court determined that Doe 4's motion could directly affect the grand jury proceeding. We turn now to a review of this assessment.[1]

■ Rule 6(e)(5) and (6) provide for closure and sealing "to the extent necessary" to protect the grand jury process. Appellants argue that this provision means that only hearings which will reveal what transpires at a grand jury investigation must be closed, and that this hearing will not reveal such information. For this reason, they protest that the hearing is "only tangentially" related to, and will not affect, the grand jury proceeding. Common sense tells us that Doe 4's motion is intrinsically related to and affects the grand jury investigation. But for the subpoena duces tecum, Doe 4 would not have been alerted to the alleged illegal electronic surveillance, and its motion would never have been made. Furthermore, the resolution of the motion may affect the outcome of the grand jury investigation.

The Advisory Committee Notes to the 1983 Amendment to Rule 6 specify that section (e)(5) was added in order to

> make it clear that certain hearings which would reveal matters which have previously occurred before a grand jury or are

---

1. We note, however, that we are proceeding upon the premise that the underlying grand jury investigation is on-going. If this supposition is inaccurate, we instruct the court to reevaluate

the value of secrecy in accordance with the framework outlined herein. *See Moten,* 582 F.2d at 662–63.

likely to occur before a grand jury with respect to a pending or on-going investigation must be conducted in camera in whole or in part in order to prevent public disclosure of such secret information.

This comment recognizes that a proceeding is related to or affects a grand jury investigation if it would reveal matters actually or potentially occurring before the grand jury. We believe that a hearing on Doe 4's motion poses a significant risk of disclosing information which has occurred or which may occur before the grand jury. Because the government has not yet confirmed or denied the investigation, we can only speculate as to the precise nature of the risk. For example, the government may be forced to reveal surveillance of Doe 4 or other potential witnesses and targets of the investigation, and the existence or conduct of other parties may be exposed in the course of discovery. We find the risk to be serious enough to consider this proceeding "related" to the grand jury investigation.

The same commentary provides two examples of hearings which may be closed under 6(e)(5), and thus are implicitly regarded as relating to or affecting the grand jury: a motion to quash a grand jury subpoena, and a motion for an immunity order. A comparison of Doe 4's motion to the motion to quash provides further support for the decision that the motion is related to the grand jury process. A motion to quash is made by a witness to a grand jury investigation, as is this motion. In order to defend against both motions, the government must reveal information about its conduct which should be kept secret from the public until conclusion of the investigative process. Because these motions are procedurally similar, the Advisory Committee Notes are consistent with our decision that Doe 4's motion affects and is related to a grand jury proceeding.

The cases touching upon this issue vary in result according to the factual circumstances.[2] For example, in a case involving the sealing of documents under Rule 6(e), *Martin v. Consultants & Administrators,*

*Inc.,* 966 F.2d 1078 (7th Cir.1992), the Seventh Circuit held that FBI reports, while not automatically included within the scope of Rule 6(e), may be included "where they are closely related to the grand jury's investigation itself and where disclosure would reveal the identities of targets and other witnesses." *Id.* at 1097. The Sixth Circuit has also held that, in determining whether information relates to matters occurring before the grand jury, the district court should ask whether the coercive powers of the grand jury were used to obtain information *or* whether disclosure of information might reveal the nature or direction of the grand jury proceedings. *In re Grand Jury Proceedings,* 851 F.2d 860, 866–67 (6th Cir.1988); *see also In re Grand Jury Investigation,* 610 F.2d 202, 216–17 (5th Cir.1980) ("matters occurring before a grand jury" include anything that will reveal what transpired during the grand jury proceedings).

In contrast, we held in *United States v. Eastern Air Lines, Inc.,* 923 F.2d 241, 244 (2d Cir.1991), that Rule 6(e) was not violated by disclosure of a search warrant affidavit, even if that information might later be presented to the grand jury, where it was obtained independently from the grand jury and did not disclose matters occurring before the grand jury. The Third, Fourth, and Tenth Circuits have similarly held that when information is produced by a criminal investigation that parallels but is independent of a grand jury investigation, disclosure of the information is not a violation of grand jury secrecy because it is not a matter occurring before the grand jury. *In re Grand Jury Subpoena (Under Seal),* 920 F.2d 235, 241–43 (4th Cir.1990); *Anaya v. United States,* 815 F.2d 1373, 1379–80 (10th Cir.1987); *In re Grand Jury Matter,* 682 F.2d 61, 64–65 (3d Cir.1982) (product of an FBI investigation, including tape recordings and transcripts of consensually monitored conversation, were not "matters occurring before a grand jury" because they were generated separately from the grand jury process, even if they might ultimately be used there); *see also United*

---

**2.** Rather than asking whether an issue is "related to" the grand jury process, most cases have assessed whether the matter is one occurring before the grand jury. We see no analytical distinction.

*States v. Dynavac, Inc.*, 6 F.3d 1407, 1412 (9th Cir.1993) (business records previously submitted to grand jury as part of criminal investigation but created for purposes independent of grand jury proceeding were not matters occurring before the grand jury); *United States v. Phillips*, 843 F.2d 438, 441 (11th Cir.1988) (financial documents obtained via grand jury subpoena but not submitted to grand jury and not indicating "pattern of the grand jury investigation" were not matters occurring before grand jury).

These cases show that the determination of whether a particular matter is related to a matter occurring before a grand jury is one that depends entirely upon a fact-specific inquiry and the district court's judgment. *Eastern Air Lines* and *In re Grand Jury Proceedings* show that, when the district court finds that disclosure of the confidential information might disclose matters occurring before the grand jury, the information should be protected by Rule 6(e); here, the district court judge clearly believed this was a likely result of opening the hearing on Doe 4's motion, and we agree. As in *Consultants & Administrators*, the hearing on Doe 4's motion may result in the disclosure of the names of other witnesses and targets of the grand jury investigation. Although we have some concern raised by the cases holding that information gleaned from governmental investigations separate from the actual grand jury investigation is not protected by Rule

6(e), we feel that their holdings are not correctly applied to this situation. Here, the independent governmental investigations that led to an ultimate grand jury investigation were not so separate from the grand jury process as to be considered unrelated to or not to affect the process.[3] We therefore hold that Doe 4's motion is related to and affects grand jury proceedings, and thereby falls under the purview of Rule 6(e)(5) and (6).

▆▆▆ The law of this circuit is clear that, once a proceeding falls under Rule 6(e), it receives a presumption of secrecy and closure. *See Moten*, 582 F.2d at 662.[4] This presumption is rebuttable. "[T]he burden is on the party seeking disclosure to show a 'particularized need' that outweighs the need for secrecy." *Id.* (citing, *inter alia*, *Dennis v. United States*, 384 U.S. 855, 868, 86 S.Ct. 1840, 1848, 16 L.Ed.2d 973 (1966)). A party makes a showing of particularized need by proving "that the material they seek is needed to avoid a possible injustice in another judicial proceeding, that the need for disclosure is greater than the need for continued secrecy, and that their request is structured to cover only material so needed." *Douglas Oil*, 441 U.S. at 222, 99 S.Ct. at 1674 (footnote omitted).[5] A district court's decision as to whether the burden of showing a particularized interest has been met will be overturned only if the court has abused its discre-

---

**3.** Our holding here does not mean that information from such governmental investigations can never be obtained, only that the information is not inherently unrelated to the grand jury investigation simply because it did not literally spring from the grand jury investigation itself. If, for example, a criminal defendant rather than the press were attempting to access information obtained through a preliminary government investigation, his conflicting constitutional rights might be powerful enough to outweigh the presumption of secrecy that attaches to proceedings protected by Rule 6(e).

**4.** Appellants would have us create a lower standard for situations in which the issues to be discussed are related to grand jury matters, as opposed to being actual grand jury matters. They argue that related proceedings should be closed only if the government can show a specific risk of disclosure of actual matters occurring before the grand jury. We believe this interpretation too narrowly confines Rule 6(e)(5) and (6)

and in any event, is bad policy. Those Rules explicitly cover related proceedings without distinction between degrees of closeness. The distinction between related matters and actual matters is so delicate as to be exceedingly difficult to apply in some situations. Also, the previous determination that the specific proceeding is related to the grand jury matters already encompasses an assessment of the risk of disclosure. Moreover, the fact that the presumption of secrecy is rebuttable provides the party seeking disclosure with an opportunity to argue the likeliness of the risk that grand jury matters will be disclosed. Because this case does, in our opinion, run a serious risk of disclosure and thus would meet even the suggested lowered standard, we decline to embrace Appellant's suggested test.

**5.** Although Appellants would have us hold that this requires a balancing of interests, the burden of persuasion is solidly on the party requesting disclosure.

tion. *Missouri v. W.E.R. (In re Grand Jury Investigation),* 55 F.3d 350, 354 (8th Cir.) (citing *Douglas Oil,* 441 U.S. at 223, 99 S.Ct. at 1675), *cert. denied,* —— U.S. ——, 116 S.Ct. 307, 133 L.Ed.2d 211 (1995). Judge Arcara correctly applied the presumption of secrecy to Doe 4's motion.[6] The burden therefore fell upon Appellants to show that they had a particularized need for access to the hearing which outweighed the presumption.

We have grave doubts as to whether Appellants made a showing of particularized need to the district court. Yet, even were we to decide that they had, we would not favor opening the hearing to the press while the grand jury investigation is on-going. In *Moten,* we stated that "[i]f a showing of particularized need has been made, disclosure should occur unless the grand jury investigation remains sufficiently active that disclosure of materials would prejudice a legitimate interest of the government...." *Moten,* 582 F.2d at 663 (citing *United States v. Socony–Vacuum Oil Co.,* 310 U.S. 150, 234, 60 S.Ct. 811, 849, 84 L.Ed. 1129 (1940) ("after the grand jury's functions are ended, disclosure is wholly proper where the ends of justice require it.")). Here, the government has made a showing that its interests would indeed be prejudiced if the motion were made public while the investigation is on-going. Because the grand jury investigation does remain active here, disclosure is inappropriate at this time. Rule 6(e), sections (5) and (6), therefore supports sealing of the papers, pleadings, and proceedings on Doe 4's motion to compel disclosure during the course of the connected grand jury investigation.

### 2. Rule 6(e)(2)

Federal Rule of Criminal Procedure 6(e)(2), the general rule of secrecy, provides that

> [a] grand juror, an interpreter, a stenographer, an operator of a recording device, a typist who transcribes recorded testimony, an attorney for the government, or any person to whom disclosure is made under paragraph (3)(A)(ii) of this subdivision shall not disclose matters occurring before the grand jury, except as otherwise provided for in these rules. No obligation of secrecy may be imposed on any person except in accordance with this rule. A knowing violation of Rule 6 may be punished as a contempt of court.

Appellants argue that this Rule precludes placing a gag order on persons other than those listed.

We believe that the district court order does not violate the dictate of Rule 6(e)(2). Although it is true that the Rule does not impose an obligation of secrecy on witnesses,[7] Judge Arcara's order does not preclude Doe 4 from discussing its appearance before the grand jury. It only prevents Doe 4 from disclosing information which may arise during the separate proceedings on its motion to compel disclosure. The order does not silence Doe 4 as a witness to a grand jury proceeding, but only as a party in an action related to a grand jury proceeding. The same is true for the silencing of the government and Appellants. The sealing order does not violate Rule 6(e)(2).[8]

---

**6.** Appellants' assertion that Judge Arcara applied an irrebuttable presumption is inaccurate. The court specifically stated that the presumption must be overcome by anyone asserting an interest in access to the proceedings, i.e., that the presumption could be rebutted.

**7.** Fed.R.Crim.P. 6(e)(2) advisory committee's note ("the rule does not impose any obligation of secrecy on witnesses.") *See also Sells Eng'g, Inc.,* 463 U.S. at 425, 103 S.Ct. at 3138 (noting that "[w]itnesses are not under the prohibition [of 6(e)(2)] unless they also happen to fit into one of the enumerated classes"); *Butterworth v. Smith,* 494 U.S. 624, 110 S.Ct. 1376, 108 L.Ed.2d 572 (1990) (witness has First Amendment right to truthfully recount his own grand jury testimony after the term of the grand jury has ended). *But see, e.g., In re Subpoena to Testify Before Grand Jury Directed to Custodian of Records,* 864 F.2d 1559, 1563–64 (11th Cir.1989) (upholding closure order prohibiting witnesses from disclosing materials prepared for and testimony given to grand jury because district court has authority to protect the integrity of grand jury proceedings).

**8.** Although our opinion does not rest on this point, we note that Rule 6(e)(2) does not preclude silencing of persons other than those expressly listed if other parts of Rule 6 so require. The Eleventh Circuit has held that district courts may silence witnesses despite Rule 6(e)(2), rea-

## B. First Amendment

■ We first take up the matter of whether the First Amendment provides the press with a right to access a civil proceeding of this nature. The Supreme Court has held that, by virtue of the First Amendment, the press receives a qualified right of access to some criminal proceedings. *El Vocero de Puerto Rico v. Puerto Rico*, 508 U.S. 147, 113 S.Ct. 2004, 124 L.Ed.2d 60 (1993) (preliminary hearing); *Press–Enterprise Co. v. Superior Court of California for the County of Riverside*, 478 U.S. 1, 106 S.Ct. 2735, 92 L.Ed.2d 1 (1986) ("*Press–Enterprise II*") (preliminary hearing transcript); *Press–Enterprise Co. v. Superior Court of California for the County of Riverside*, 464 U.S. 501, 104 S.Ct. 819, 78 L.Ed.2d 629 (1984) ("*Press–Enterprise I*") (jury selection); *see also Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984) (pretrial suppression hearing by virtue of Sixth Amendment). The hearing on Doe 4's motion to compel disclosure is, however, a civil proceeding. Doe 4 has not been indicted. Although closely related to the grand jury process and thereby to the realm of the criminal, the motion is itself civil. Although the Supreme Court has not directly addressed this matter,[9] we have held that the press enjoys a constitutional right of access to civil judicial proceedings as well as criminal. *Westmoreland v. Columbia Broadcasting System, Inc.*, 752 F.2d 16 (2d Cir.1984) (holding that the First Amendment,

---

soning that that rule does not itself grant authority to gag witnesses but also does not prevent other rules from doing so. *See In re Subpoena To Testify Before Grand Jury*, 864 F.2d at 1563–64. We agree with this rationale. Although Rule 6(e)(2) does not expressly forbid Doe 4 as a witness from disclosing grand jury matters, the categories of persons silenced by the rule are not absolutely exclusive. "No obligation of secrecy may be imposed on any person *except in accordance with this rule.*" (Emphasis added.) In other words, persons other than those listed may be held to secrecy if other sections or subsections of Rule 6 so require. Because subsections e(5) and e(6) mandate secrecy in Doe 4's motion, it follows that parties to the instant action, including Doe 4, may be silenced pursuant to Rule 6(e)(2).

9. The Court has touched upon the issue in dicta, however. For example, the Court has stated that "[a civil] litigant has no First Amendment right of access to information made available only for purposes of trying his suit." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 32, 104 S.Ct. 2199, 2207, 81 L.Ed.2d 17 (1984). In holding that a protective order limited to pretrial discovery does not violate the First Amendment, the Court continued, "[m]oreover, pretrial depositions and interrogatories are not public components of a civil trial. Such proceedings were not open to the public at common law, and in general, they are conducted in private as a matter of modern practice." *Id.* at 33, 104 S.Ct. at 2207–08 (citations and footnote omitted).

In contrast, Justice Stevens argued in dissent from *Press–Enterprise II* that "the logic of the Court's access right extends even beyond the confines of the criminal justice system to encompass proceedings held on the civil side of the docket as well." *Press–Enterprise II*, 478 U.S. at 27, 106 S.Ct. at 2735 (Stevens, *J.*, dissenting). Justice Stevens further cited to Justice Stewart's majority opinion regarding the Sixth Amendment in *Gannett Co. v. DePasquale*, 443 U.S. 368, 386–87 n. 15, 99 S.Ct. 2898, 2908–09 n. 15, 61 L.Ed.2d 608 (1979), which we record here as in the original:

If the existence of a common-law rule were the test for whether there is a Sixth Amendment public right to a public trial, therefore, there would be such a right in civil as well as criminal cases. But the Sixth Amendment does not speak in terms of civil cases at all; by its terms it is limited to providing rights to an accused in criminal cases. In short, there is no principled basis upon which a public right of access to judicial proceedings can be limited to criminal cases if the scope of the right is defined by the common law rather than the text and structure of the Constitution.

Indeed, many of the advantages of public criminal trials are equally applicable in the civil trial context. While the operation of the judicial process in civil cases is often of interest only to the parties in the litigation, this is not always the case. Thus, in some civil cases the public interest in access, and the salutary effect of publicity, may be as strong as, or stronger than, in most criminal cases.

(citations omitted).

We further note the comments of the majority opinion in *Globe Newspaper Co. v. Superior Court for the County of Norfolk*, 457 U.S. 596, 604, 102 S.Ct. 2613, 2619, 73 L.Ed.2d 248 (1982), which stated that "[u]nderlying the First Amendment right of access to criminal trials is the common understanding that 'a major purpose of that Amendment was to protect the free discussion of governmental affairs.' " *Id.* (quoting and citing, *inter alia*, *Mills v. Alabama*, 384 U.S. 214, 218, 86 S.Ct. 1434, 1436, 16 L.Ed.2d 484 (1966)). We see no reason why the same policy rationale should not apply to grant a constitutional right to access a motion such as Doe 4's, which is directly related to alleged governmental misconduct.

while guaranteeing a public right to access civil and criminal trials, does not guarantee the right to view them on television). We therefore begin with the supposition that the First Amendment provides the press with an avenue to access materials or proceedings on civil motions such as Doe 4's.

■■■ We nevertheless hold that Appellants have not met the two-step test enunciated by the Supreme Court for determining whether a particular proceeding should be made public. *Press–Enterprise II,* 478 U.S. 1, 106 S.Ct. 2735. The Court held that a district court should first evaluate whether a qualified right of access attaches to the proceeding, which involves consideration of two "complementary" concerns: whether the place and proceeding in question has historically been open to the press and public, and whether public access plays a significant positive role in the functioning of the particular process in question. *Id.* at 8–9, 106 S.Ct. at 2740–41. If the qualified right attaches, the presumption of openness " 'may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Id.* at 9, 106 S.Ct. at 2741 (quoting *Press–Enterprise I,* 464 U.S. at 510, 104 S.Ct. at 824). *See also United States v. Doe,* 63 F.3d 121, 127 (2d Cir.1995).

Appellants argue that the "proceeding" at issue for purposes of the first analytical prong is Doe 4's motion to disclose illegal electronic surveillance, and that hearings on such motions have traditionally been open to the public. The government argues in response that the pertinent "proceeding" is the grand jury investigation, which traditionally has been sealed from public view. We agree with Appellants that the proceeding in question is the motion to disclose. Appellants do not seek access to the grand jury investigation or hearings; they seeks access to the motion to disclose. While the grand jury investigation is certainly related, it is not the legal proceeding at issue.

It is arguable whether motions to disclose have traditionally been open to the public. *See, e.g., United States v. Martin,* 684 F.Supp. 341 (D.Mass.1988). We believe that the presence of the press in a hearing on a motion to disclose electronic surveillance often can play a significant positive role for society and the legal system. As Appellants point out, public scrutiny of the legal process, and of a wiretapping case in particular, serves as a check on potential governmental abuse in both the fact-finding and trial stages of a case. *See Gannett,* 443 U.S. at 406–33, 99 S.Ct. at 2919–33 (Blackmun, *J.,* concurring in part and dissenting in part). We therefore agree that it is possible that the First Amendment requires that a qualified right to press access attaches to this motion to disclose illegal electronic surveillance.

Even if the presumption of openness attaches to that qualified right, however, it is overcome in the grand jury context by the overriding interest in secrecy. The facts surrounding the grand jury investigation are so integrally linked to Doe 4's motion to disclose as to render them inseparable, at least until the investigation has been completed. The policy for maintaining closure in this case has been exposed fully in our discussion of Fed.R.Crim.P. 6(e), *supra. See also Branzburg v. Hayes,* 408 U.S. 665, 684, 92 S.Ct. 2646, 2658, 33 L.Ed.2d 626 (1972) ("Despite the fact that news gathering may be hampered, the press is regularly excluded from grand jury proceedings...."); *In re Subpoena to Testify Before Grand Jury,* 864 F.2d at 1562 (First Amendment does not grant the press the right to access grand jury proceedings); *Krause v. Rhodes,* 535 F.Supp. 338, 348 (N.D.Ohio 1979) (grand jury secrecy overrides First Amendment interest in grand jury testimony), *aff'd on other grounds,* 671 F.2d 212 (6th Cir.1982). The motion to compel disclosure cannot be opened to the public at this time without compromising grand jury confidentiality. In other words, "closure is essential to preserve higher values."

Furthermore, two aspects of the sealing order indicate that it is narrowly tailored to serve the need for secrecy. First, the order does not prohibit Doe 4 from disclosing the fact that it has been subpoenaed or its grand jury appearance. Second, the order has closed the pleadings, papers, and proceedings on Doe 4's motion only for such time as is necessary, not permanently. Should the

need for secrecy diminish with changed circumstances, such as termination of the grand jury investigation, Judge Arcara is free to reevaluate whether continuation of the sealing order complies with *Press–Enterprise II.* Although Appellants argue that more narrow alternatives to closure existed, such as keeping witness identity secret, more narrow solutions do not adequately account for all of the factors that make up the need for grand jury secrecy, including the protection of the grand jurors themselves and the possibility of alerting the actual target of the investigation. We believe that, for the time being, Judge Arcara's order is as narrow as possible to preserve the need for utmost security.

In summary, Appellants' interest in accessing the hearing on Doe 4's motion is subject to the *Press–Enterprise II* test. Under that test, Appellants may have a qualified right to access the proceeding; it is, however, overcome by the government's interest in maintaining the secrecy of the grand jury process. For these reasons, the First Amendment provides no relief to Appellants at this time.[10]

### Conclusion

Because Doe 4's motion is a proceeding related to and affecting a grand jury proceeding in that it is likely to reveal information which will or has come before the grand jury and may compromise the efficacy of that investigation, it is covered by Rule 6(e)(5) and (6). A presumption of secrecy attaches to proceedings covered by these sections of the Rule. Although that presumption is ordinarily rebuttable upon a showing of a "particularized need" for the information, the law of this circuit weighs against disclosure of grand jury information even upon a showing of particularized need while the grand jury investigation remains active. Furthermore, the First Amendment does not mandate opening the motion to the public, either because the press has no First Amendment interest in accessing this type of civil proceeding, or, alternately, because the government's interest in maintaining the confiden-

tiality of on-going grand jury investigations outweighs any potential qualified right of access to the proceeding.

We affirm the district court's written order of July 24, 1996, sealing all papers, pleadings, and related proceedings in this case until further notice.

---

**10.** *But cf. Press–Enterprise II,* 478 U.S. at 26–27, 106 S.Ct. at 2750 (Stevens, *J.,* dissenting). Justice Stevens argued that "[t]he Court's reasoning [in *Press–Enterprise II* ]—if carried to its logical outcome—thus contravenes the 'long-established policy that maintains the secrecy of the grand jury proceedings in the federal courts' and in the courts of 19 States." (quoting *Procter & Gamble,* 356 U.S. at 681, 78 S.Ct. at 985).