

2001 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-18-2001

# In Re:Intervenor Newark Morning Ledger Co.

Precedential or Non-Precedential:

Docket 01-1512

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2001

Recommended Citation

"In Re:Intervenor Newark Morning Ledger Co." (2001). *2001 Decisions.* Paper 159.
http://digitalcommons.law.villanova.edu/thirdcircuit_2001/159

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 2001 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 18, 2001

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 01-1512

I M P O U N D E D

      NEWARK MORNING LEDGER CO.,
      Publisher of The Star-Ledger,
      Appellant

On Appeal from the United States District Court
for the District of New Jersey
D.C. Miscellaneous No. 99-mc-00281
(Honorable John C. Lifland)

Argued May 15, 2001

Before: SCIRICA, GARTH and STAPLETON, Circuit Judges

(Filed July 18, 2001)

      DONALD A. ROBINSON, ESQUIRE
       (ARGUED)
      Robinson & Livelli
      Two Penn Plaza East, 11th Floor
      Newark, New Jersey 07105

       Attorney for Appellant,
      Newark Morning Ledger Co.,
      Publisher of The Star-Ledger

DEMETRA LAMBROS, ESQUIRE
 (ARGUED)
JAMES E. CASTELLO, ESQUIRE
United States Department of Justice
Criminal Division-Appellate Section
601 D Street, N.W., Suite 6206
Washington, D.C. 20530

 Attorneys for Appellee,
United States of America

THEODORE V. WELLS, JR.,
 ESQUIRE (ARGUED)
Paul Weiss Rifkind Wharton &
 Garrison
1285 Avenue of the Americas
New York, New York 10019-6064

DAVID E. BARRY, ESQUIRE
Pierce Atwood
One Monument Square
Portland, Maine 04101

 Attorneys for Appellee,
John Doe 1

ADAM S. HOFFINGER, ESQUIRE
ROBERT A. SALERNO, ESQUIRE
Piper Marbury Rudnick & Wolfe
1200 19th Street, N.W., Suite 700
Washington, D.C. 20036

 Attorneys for Appellee,
John Doe 2

THOMAS J. CAFFERTY, ESQUIRE
ARLENE M. TURINCHAK, ESQUIRE
McGimpsey & Cafferty
285 Davidson Avenue, Suite 404
Somerset, New Jersey 08873

 Attorneys for Amicus Curiae-
Appellants, The New Jersey Press
Association, The Associated Press,
Bloomberg, LP Philadelphia
Newspapers, Inc. The New York
Times

KATHERINE HATTON, ESQUIRE
Philadelphia Newspapers, Inc.
Legal Department
400 North Broad Street
Philadelphia, Pennsylvania 19102

Attorney for Amicus Curiae-
Appellant, Philadelphia
Newspapers, Inc.

OPINION OF THE COURT

SCIRICA, Circuit Judge.

The issue on appeal is whether the District Court erred in temporarily sealing the initial filings and hearings concerning a contempt motion filed under Fed. R. Crim. P. 6(e)(2) pending its determination whether secret grand jury material would be disclosed. Our opinion in United States v. Smith, 123 F.3d 140 (3d Cir. 1997), provides the rule of decision in this matter. We will affirm.

I.

On February 13, 2001, the Newark Star Ledger discovered that a motion had been filed under seal in District Court. The Star Ledger believed the motion sought contempt proceedings against United States Justice Department attorneys or agents for leaking secret grand jury information to the media, in violation of Fed. R. Crim. P. 6(e)(2).[1] The Star Ledger filed a motion to intervene and to unseal the motion. After granting the motion to intervene, the District Court conducted a bifurcated hearing to determine whether the motion should be unsealed and whether subsequent filings and proceedings should be sealed. The first hearing occurred in a closed session.

After the initial hearing, the court opened the proceedings

_____

1. Fed. R. Crim. P. 6 (e)(2) provides, "[A]n attorney for the government . . . . shall not disclose matters occurring before the grand jury . . . . A knowing violation of Rule 6 may be punished as a contempt of court."

3

stating it had made a "preliminary deter mination to deny access to all the filings and proceedings" holding that "at least for now [it] should not and must not open [the] proceedings to the public because of its grand jury context." The Star Ledger contended the motion for contempt proceedings did not implicate grand jury infor mation. For this reason, it argued the motion and pr oceedings were entitled to a presumption of openness under Fed. R. Crim. P. 6 (e)(5).2 But the District Court held the filings "related to grand jury proceedings" and under Fed. R. Crim. P. 6(e)(6)3 and United States v. Smith, 123 F.3d 140 (3d Cir. 1997), they must remain sealed pending a deter mination whether secret grand jury information was implicated. After making this determination, the District Court stated it would open all non-secret filings and proceedings. 4 The Star Ledger

_____

2. Fed. R. Crim. P. 6(e)(5) provides,"Closed Hearing. Subject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand jury pr oceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury."
3. Fed. R. Crim. P. 6(e)(6) provides,"Sealed Records. Records, orders, and subpoenas relating to grand jury pr oceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosure of matters occurring before a grand jury."
4. In open session, the court stated,

> [A]s everyone knows, we have in these papers allegations that well recognized principles of grand jury secr ecy have been violated,

and

> there are some specifics in the papers .. . . [I]n my judgment, it would be inappropriate to disclose them at this time, and inappropriate in the sense that allegations, if disclosed, would necessarily disclose at least one party's view as to what went on before a grand jury.

> * * *

> I agree that absent the grand jury aspect of this case, the situation of a citizen who happens to be a United States Senator complaining about improper activities by the executive branch would be a matter of intense public interest. That goes without saying.

> But the motion before me is in the context of grand jury proceedings and that puts it in an entirely differ ent light, and requires me to evaluate the presumption of public access in the context of the countervailing presumption of grand jury secr ecy.

I am satisfied that these allegations and these pr oceedings must remain under seal.

4

appealed.5

II.

The District Court had jurisdiction under 18 U.S.C.
S 401. We have jurisdiction over afinal order denying
access to court records and proceedings under 28 U.S.C.
S 1291. United States v. Antar, 38 F .3d 1348, 1355-56 (3d
Cir. 1994) ("[O]rders either granting or denying access to
portions of a trial record are appealable as final orders
pursuant to S 1291."); United States v. Simone, 14 F.3d 833,
836 (3d Cir. 1994) (court order denying public access to
post-trial proceedings was final order and appealable under
S 1291). We exercise plenary r eview over the District Court's
decision to deny access to and seal trial recor ds. Antar, 38
F.3d at 1357. Although we generally r eview factual findings
for clear error, when the First Amendment is implicated, we
exercise independent appellate review. On a First
Amendment right of access claim, our scope of r eview of
factual findings "is substantially broader than that for
abuse of discretion." Smith, 123 F .3d at 146.

III.

The Supreme Court has recognized a First Amendment
right of access to most criminal proceedings. See, e.g.,
Richmond Newspapers, Inc. v. Virginia, 448 U.S. 555, 578
(1980); Nixon v. Warner Communications, Inc., 435 U.S.
589, 597 (1978) ("It is clear that the courts of this country
recognize a general right to inspect and copy public records
and documents, including judicial recor ds and
documents."); Antar, 38 F.3d at 1359-60. This right of
access promotes important societal inter ests including
confidence in the judicial system. See, e.g. , Press-Enterprise
Co. v. Super. Ct., 478 U.S. 1, 11-12 (1986); Leucadia, Inc. v.
Applied Extrusion Techs., Inc., 998 F .2d 157, 161 (3d Cir.
1993). We have extended this right of access to many pre-
trial criminal proceedings including pr e-trial suppression,
due process, and entrapment hearings.6 United States v.
_____

5. The New Jersey Press Association filed an amicus curiae brief arguing
the District Court erred in sealing the pr oceedings.
6. In Richmond Newspapers, Inc., the Supr eme Court held the
presumption of openness in criminal proceedings extends beyond the

5

Criden, 675 F.2d 550, 554 (3d Cir . 1982). But this right of access is not unlimited. Under certain circumstances the right of public access may be outweighed by countervailing principles.7 United States v. Smith, 787 F.2d 111, 114 (3d Cir. 1986). Among the few limitations to the First Amendment right of access in criminal hearings, none is more important than protecting grand jury secrecy. Douglas Oil Co. of Cal. v. Petrol Stops N.W. , 441 U.S. 211, 218

_____

trial to many other stages of a criminal case including preliminary hearings and post trial proceedings. 448 U.S. at 573. The Supreme Court has developed a two part test to deter mine whether the First Amendment right of access attaches to a particular stage of a criminal proceeding. See Press–Enterprise Co. , 478 U.S. at 8–9. This test asks whether (1) experience and (2) logic favor public access. Id. Under the experience prong, courts consider whether "the place and process have historically been open to the press and the general public." Id. at 8. Under the logic prong, courts consider whether"public access plays a significant positive role in the particular process in question." Id. In making this logic determination courts look to six factors,

> [Whether access] (1) Promot[es] . .. informed discussion of government affairs by providing the public with [a] more complete understanding of the judicial system; (2) pr omot[es] . . . the public
> perception of fairness which can be achieved only by permitting full
> public view of the proceedings; (3) provid[es] a significant therapeutic value as an outlet for community concer n, hostility, and
> emotion; (4) serv[es] as a check on corrupt practices by exposing the
> judicial process to public scrutiny; (5) enhanc[es] . . . the performances of all involved; and (6) discourag[es] . . . perjury.

United States v. Smith, 787 F.2d 111, 114 (3d Cir. 1986) (summarizing United States v. Criden, 675 F.2d 550, 556 (3d Cir. 1982)).

7. Even if experience and logic favor a pr esumption of access, a court may still seal a proceeding if closure is justified by overriding principles.
Press-Enterprise Co., 478 U.S. at 9 (wher e the constitutional right of access exists, "proceedings cannot be closed unless . . . closure is essential to preserve higher values and is narr owly tailored to serve that
interest"). The court must make "particularized findings on the record" when it closes proceedings despite finding a presumption of access. Id. These findings must " `establish[ ] the existence of a compelling governmental interest, and . . . demonstrat[e] that absent limited restrictions upon the right to access, that other interest[s] would be substantially impaired.' " Smith,123 F.3d at 147 (quoting Antar, 38 F.3d

at 1359).

(1979). The Supreme Court has held that grand jury proceedings must remain secret noting,

> [S]everal distinct interests [ar e] served by safeguarding the confidentiality of grand jury proceedings. First, if preindictment proceedings were made public, many prospective witnesses would be hesitant to come forward voluntarily, knowing that those against whom they testify would be aware of that testimony. Moreover, witnesses who appear befor e the grand jury would be less likely to testify fully and frankly, as they would be open to retribution as well as inducements. There also would be the risk that those about to be indicted would flee, or would try to influence individual jurors to vote against indictment. Finally, by preserving the secrecy of the proceedings, we assur e that persons who are accused but exonerated by the grand jury will not be held up to public ridicule.

Douglas Oil Co., 441 U.S. at 218-19 (inter nal citations omitted).

In United States v. Smith, 123 F.3d 140 (3d Cir. 1997), we held the broad secrecy historically af forded to grand jury proceedings should, in certain circumstances, extend to non-grand jury proceedings when secret grand jury material may be disclosed. We also held ther e is no presumptive First Amendment or common law right of access to court documents that involve materials pr esented before a grand jury, including initial motions,filings and proceedings alleging contempt under Fed. R. Crim. P. 6(e). Smith, 123 F.3d at 150 ("[I]f the district court seals a proceeding or brief because it would disclose grand jury matters, there is no First Amendment right of access to it even if it also concerns possible impr oper actions by government officials.").

A.

In Smith, the Newark Star Ledger sought access to records and proceedings in the sentencing phase of a criminal proceeding. The underlying criminal case in Smith involved participants in a state lottery kickback scheme who were convicted on various felony char ges. Before

7

sentencing, the government submitted its sentencing recommendations to the court. The memorandum also referenced other uncharged individuals allegedly involved in the kickback scheme. After submitting the memorandum to the court, the government made the memorandum public by placing it on its website and providing copies to the media.

The uncharged individuals maintained the gover nment's disclosure of the memorandum which included the identity of grand jury witnesses violated Fed. R. Crim. P . 6(e). The District Court ordered the government to remove the sentence memorandum from its website pending a determination whether it actually contained grand jury material. The court also ordered the parties to file under seal any further motions and documents concer ning the potential Fed. R. Crim. P. 6(e) violation. The court stated that it would determine at a later date "whether there is sufficient implication of Rule 6(e) . . . to warrant closure" of future proceedings. Smith, 123 F .3d at 145. Subsequently, the government and the uncharged individuals filed briefs under seal.

The Newark Star Ledger moved to intervene to obtain the parties' motions and filings and to have access to further proceedings. Denying the newspaper's request for access, the court reasoned "the very reason[the briefs are] sealed is there may be material in them which af fects Rule 6(e)." Id. After review, the court said it would disclose all non-grand jury materials. The Star Ledger appealed contending it had a First Amendment and common law right of access to all this information.

Recognizing the First Amendment right of access to pre-trial criminal proceedings, we held ther e was no right of access when grand jury materials are involved, stating that

> Douglas Oil [ ] implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of `experience and logic.' Historically, such proceedings have been closed to the public. Moreover, public access to grand jury proceedings would hinder, rather than further, the efficient functioning of the proceedings.

Id. at 148. Observing that the secrecy of grand jury proceedings also extends to collateral pr oceedings containing grand jury material, we stated, "Rather than according secrecy only to grand jury pr oceedings themselves, the rules provide a presumption of secrecy to all proceedings that `affect' grand jury proceedings. Concomitantly, not only are grand jury materials themselves to be kept secret, but so ar e all materials that `relate to' grand jury proceedings." Id. at 149; see also In re Grand Jury Subpoena (Doe No. 4 v. Doe No. 1), 103 F.3d 234, 237 (2d Cir. 1996) ("The plain language of the Rule shows that Congress intended for its confidentiality provisions to cover matters beyond those actually occurring before the grand jury."). Fed. R. Crim. P . 6(e)(6) provides that "[r]ecords, orders, and subpoenas relating to grand jury proceedings shall be kept under seal to the extent and for such time as is necessary to prevent disclosur e of matters occurring before a grand jury." (emphasis added). Similarly, Fed. R. Crim. P. 6(e)(5) provides, "Subject to any right to an open hearing in contempt proceedings, the court shall order a hearing on matters affecting a grand jury pr oceeding to be closed to the extent necessary to prevent disclosure of matters occurring before a grand jury."

Applying these rules, we stated the critical question in determining whether to unseal the proceedings and materials relating to the uncharged individuals' motion was "whether [they] w[ould] disclose grand jury matters so that they `affect' or `relate to' grand jury proceedings within the meaning of Rule 6(e)(5) and 6(e)(6)." Smith , 123 F.3d at 150 (citing 1 Charles Alan Wright, Federal Practice and Procedure S 106, at 250 (1982) ("The rule of secrecy applies . . . to anything that might tend to reveal what happened in the grand jury room.")); see also Fed. R. Crim. P. 6 advisory committee's note ("[Rule 6(e)(5)] make[s] it clear that certain hearings which would reveal matters which have previously occurred before a grand jury or ar e likely to occur before a grand jury with respect to a pending or ongoing investigation must be conducted in camera in whole or in part in order to prevent public disclosur e of such secret information."). We concluded the materials at issue (i.e., the sentencing memorandum and the filings surr ounding it) were sufficiently related to grand jury proceedings so that

9

disclosure could potentially interrupt and affect the grand jury proceedings. Smith, 123 F.3d at 150.

Although the pending motions in Smith were post-trial motions, the heart of the alleged misconduct was an allegation that the government disclosed secret grand jury information. Id. at 149. We stated,

> [T]he ultimate issue to be decided by the district court is whether attorneys for the government committed any wrongdoing [but] . . ., this question cannot be resolved without the district court's determining whether that sentencing memorandum includes Rule 6(e) material. Thus the focus of the proceedings before the district court is on the question whether the disputed material contained in the sentencing memorandum is in fact grand jury material. In this proceeding, grand jury matters may potentially be disclosed.

Id. at 150.

We stated, "A court should close a hearing to decide whether disclosure is warranted if that hearing would necessarily disclose grand jury matters." Id. (emphasis in original). Therefore, the District Court in Smith did not err in initially sealing the motions and proceedings because,

> Faced with a bona fide claim that 6(e) material was disclosed in the sentencing memorandum, the [district] court prevented further disclosures of that material, thereby preserving the "status quo," while the parties briefed the question and the court brought them in for a hearing . . . . If the district court made [the 6(e)] determination in a public proceeding, it would further disseminate the potential secrets in doing so.

Id. at 152. There was another reason for sealing the proceedings. The government intended to present actual grand jury material to prove that it did not unlawfully disclose grand jury secrets in the sentence memorandum in violation of Fed. R. Crim. P. 6(e). Because the government averred it was going to present actual grand jury material in the proceedings, an ex parte in camera examination was appropriate to prevent disclosure. Id. at 151 (citing In re Grand Jury, 103 F.3d 1140 (3d Cir. 1997) ("Ex parte in

10

camera hearings have been held proper in or der to preserve the ongoing interest in grand jury secr ecy.")).

Addressing the Star Ledger's argument that the District Court should have redacted the briefs and filings and provided public access to all non-grand jury information, we found no error in the determination to seal all the proceedings because,

> [T]he district court simply cannot deter mine what material is secret and what can be disclosed to the public without determining whether the sentencing memorandum contains Rule 6(e) material. Yet that decision, in turn, cannot be made without the benefit of the briefs and in particular, without the benefit of oral argument.
>
> * * *
>
> Under these circumstances requiring access to some aspects of the hearing will be cumbersome, impractical, and inefficient.

Id. at 153.

In Smith, we concluded the District Court pr operly sealed all the materials until such time as it decided what, if any, grand jury secrets were implicated. Per mitting public access to certain portions of the filings and pr oceedings while excluding them from other portions of the proceeding would create a "revolving door" hearing. Id. "Courts cannot conduct their business that way, and we will not tie the hands of the district court in this fashion." Id.

B.

We believe Smith controls her e. The District Court had to first determine whether the information alleged to have been leaked implicated secret grand jury infor mation before determining whether to initiate contempt pr oceedings. As we held in Smith, "[A] court should close a hearing to decide whether disclosure is warranted if that hearing would necessarily disclose grand jury matters." 123 F .3d at 150.

11

Premature disclosure might divulge secret grand jury information.8

Furthermore, the government r epresented that in future hearings concerning the motion it intended to present undisclosed grand jury material in order to pr ove that no Fed. R. Crim. P. 6(e) violation occurr ed. In these circumstances, the court properly sealed the proceedings pending its initial determination of whether secret grand jury material was implicated. Id. at 152; see accord In re Motions of Dow Jones & Co. Inc., 142 F.3d 496, 501 (D.C. Cir.) ("As a matter of judicial administration, initially closing all ancillary proceedings makes good sense. If a hearing is about something `affecting' a grand jury investigation, there will nearly always be a danger of revealing grand jury matters."), cert. denied, 525 U.S. 820 (1998).

But the Star Ledger contends the District Court could have simply redacted grand jury information and permitted access to the rest of the materials.9  See In re Dow Jones,

_____

8. As we stated in Smith, "[Supr eme Court precedent] implicitly makes clear that grand jury proceedings are not subject to a First Amendment right of access under the test of `experience and logic.' " 123 F.3d at 150;
see also S. Beale, et al., 1 Grand Jury Law & Practice S 5:8.1 (2d ed. 2000) ("Unlike other criminal proceedings to which a First Amendment right of access has been found, there is no tradition of openness in grand jury proceedings. The tradition of secr ecy extends to proceedings ancillary to a grand jury investigation, and ther eby precludes any First Amendment right of access to those proceedings.") (footnotes omitted). Regardless of the intense public interest in this matter, when grand jury material is implicated there is no presumptive First Amendment right of access to the material. Smith, 123 F .3d at 150 ("[I]f the district court seals a proceeding or brief because it would disclose grand jury matters, there is no First Amendment right of access to it even if it also concerns possible improper actions by government officials.").

9. On appeal the Star Ledger and amicus contend that even if we do not find a presumption of access under "experience and logic," the District Court's closure of all the proceedings was not narrowly tailored. See Press-Enterprise, Co., 479 U.S. at 9 (once a presumptive right of access is found, this may be overcome "only by an overriding interest based on findings that closure is essential to pr eserve higher values and is narrowly tailored to serve that interest."). Nor did the District Court here
issue particularized findings identifying a compelling governmental

12

142 F.3d at 502 ("In all events, if the[court] can allow some public access without risking disclosure of grand jury matters -- either because of the subject of the pr oceedings removes the danger or because the proceedings may be structured to prevent the risk without disruption or delay, Rule 6(e)(5) contemplates that this shall be done.") (internal citation omitted). It contends that the court could have revealed the names of the parties alleged to have leaked the information, without revealing matters currently before the grand jury. We disagree. The District Court properly recognized that it was required to determine whether secret grand jury information was leaked, and whether the information in the complaining party's motion implicated secret grand jury material. As we held in Smith, the better practice is to initially seal the entire pr oceedings and

> inform[ ] the parties that [the court] will disclose all nonsecret aspects of . . . the briefs, and the hearing as soon as it determines which aspects of those papers and proceedings are secret . . . .[T]hat access is enough to satisfy any right of access that the newspapers may have to the nonsecret aspects of the proceedings.

123 F.3d at 153-54.

_____

interest which would be impaired if the pr oceedings were not sealed. Smith, 123 F.3d at 147 (court must "establish the existence of a compelling governmental interest and . . . demonstrat[e] that absent limited restrictions upon the right to access that other interests would be
substantially impaired").

But we see no error. As we held in Smith, once the court finds that neither experience nor logic require a pr esumptive First Amendment right of access, there is no need to addr ess whether the court's actions were narrowly tailored. 123 F.3d at 151 (once court determines there is no presumptive First Amendment right of access, the "inquiry ends [t]here, and [there is no need] to reach the question whether the district court made particularized findings that the need for closure outweighed the interest in public access").

13

C.

1.

On appeal, the Star Ledger attempts to distinguish Smith on the facts. It contends the complaining parties in Smith (i.e., the uncharged individuals mentioned in the sentence memorandum) actually appeared before the grand jury, but here, it claims the complaining party was neither a target of an investigation nor a witness before the grand jury. For this reason, it argues, permitting access to the motions and filings would have revealed only what a non-witness, without knowledge of grand jury testimony, believed was secret grand jury information. Because the complaining party lacked "actual knowledge" of what occurr ed before the grand jury, the Star Ledger contends the filings and proceedings would not have revealed any grand jury secrets. Disclosure, therefor e, would not have violated Fed. R. Crim. P. 6(e) because the motion was based merely on "rumor, innuendo, speculation, and infor mation already in the public domain."10 Br . of amicus curiae at 4.

But the complaining party's "knowledge" is immaterial during the initial stages of a Rule 6(e) proceeding. Because a motion alleging government misconduct may contain potential grand jury secrets, Fed. R. Crim. P . 6(e) requires

_____

10. Amicus argue the complaining party's allegation was based on information already reported in the press and therefore was not secret information. See In re Dow Jones, 142 F.3d at 505 ("It is true that `Rule 6(e) does not create a type of secrecy which is waived once public disclosure occurs' . . . . But it is also true that `when information is sufficiently widely known . . . it has lost its character as Rule 6(e) material.' ") (quoting In re North, 16 F.3d 1234, 1245 (D.C. Cir. 1994)). But even if the motion is based on information already reported in the media, this information may still be secr et grand jury material. As we held in Smith,

    [I]t is clear to us that a court is simply not powerless, in the face of
    an unlawful disclosure of grand jury secr ets, to prevent all further
    disclosures by the government of those same jury secrets. In other
    words, even if grand jury secrets ar e publicly disclosed, they may
    still be entitled to at least some protection from disclosure.

123 F.3d at 154.

14

the proceedings be initially sealed until the court can determine what, if any, secret grand jury information is implicated. Smith, 123 F.3d at 152.

2.

The Star Ledger also contends that under Fed. R. Crim. P. 6(e) grand jury contempt proceedings are presumptively open to the public and should be closed only to the extent necessary to prevent improper disclosure.11 See In Re Grand Jury Investigation (DiLoreto), 903 F .2d 180, 182 (3d Cir. 1990). But the Star Ledger's reliance on DiLoreto is misplaced. DiLoreto did not involve grand jury secrets or even grand jury testimony. In DiLoreto  we held the district court should disclose the termination date of a grand jury investigation so that an individual held in contempt for refusal to testify would be put on notice when his contempt status would end.12 Id. at 183-84 (discussing survey "which reveals that in the vast majority of United States District Courts, the commencement and termination dates of the grand jury are matters of public recor d"). The public disclosure in DiLoreto, ther efore, did not implicate secret grand jury testimony.

3.

The Star Ledger's contention that only "cor e" grand jury material is subject to disclosure is not supported by case law. Smith, 123 F.3d at 149 (" `The plain language of . . . Rule [6(e)] shows that Congress intended for its

_____

11. In connection with this argument the Star ledger notes that in contrast to Smith where there was no independent right of public access to the leaked document, (i.e., the sentencing memorandum) here there is a presumptive right of access to filings in a contempt motion. It argues that in Smith the sentence memorandum was pr esumptively confidential under Fed. R. Crim. P. 32, while in the pr esent case there is a historically rooted practice of openness in contempt proceedings.

But this distinction is not dispositive. The pr esumption of open access is lost once grand jury materials are pr esent. Smith, 123 F.3d at 148-49.

12. DiLoreto was being held in custody until the termination of the grand jury investigation.

15

confidentiality provisions to cover matters beyond those actually occurring before the grand jury.' ") (quoting In Re Grand Jury Subpoena, 103 F.3d at 237). The secrecy afforded to grand jury materials under Fed. R. Crim. P. 6(e) extends beyond the actual grand jury proceeding to collateral matters, including contempt proceedings, which relate to grand jury proceedings and may potentially reveal grand jury information. Id. ("[N]ot only are grand jury materials themselves to be kept secret, but so are all materials that `relate to' grand jury pr oceedings."). For this reason, we believe the District Court pr operly delayed public access to the materials and proceedings until a proper determination could be made whether the motion implicated secret grand jury information. Id. at 153.

4.

The Star Ledger also contends Fed. R. Crim. P . 6(e)(5) provides that contempt proceedings ar e presumptively entitled to public access, even when grand jury material is present. It cites a series of cases wher e courts have held that contempt proceedings should be open to the public. See In re Oliver, 333 U.S. 257 (1948); In re Iowa Freedom of Info. Council, 724 F.2d 658, 661 (8th Cir . 1983) ("[T]he protection of the First Amendment extends to pr oceedings for contempt, a hybrid containing both civil and criminal characteristics.");13 In re Rosahn, 671 F.2d 690, 697 (2d Cir. 1982).

But these cases only address the adjudicative process. In re Oliver, 333 U.S. at 273 (holding one man grand jury that held witness in contempt and sentenced him to prison was contempt proceeding to which there was a right to public access);14 In re Rosahn, 671 F.2d at 697 ("[A] contempttrial

---

13. The Star Ledger's reliance on In r e Iowa Freedom of Information Council, 724 F.2d at 661, is misplaced because it does not address the secrecy afforded to grand jury materials but rather whether trade secrets are entitled to secrecy. As we noted in Smith, when grand jury material is at issue, the First Amendment right of access demands a different analysis. Smith, 123 F.3d at 150.

14. In In re Oliver, the Court stated,

may properly be closed to the public when substantive grand jury matters are being considered.") (emphasis added)). Here, the initial motions and hearings did not involve adjudicative procedures in a contempt proceeding. The District Court was at the preliminary stage of sorting out whether secret grand jury material was implicated.

As the Court of Appeals for the D.C. Circuit r ecently recognized there are several stages to a criminal contempt proceeding, explaining,

> First, the district court must determine whether the plaintiff has established a prima facie case [i.e., that a Fed. R. Crim. P. 6(e)(2) violation has occurr ed] . . . . Second, if the court determines that a prima facie case has been established, the burden shifts to the government to "attempt to explain its actions" in a show cause hearing. If the government fails to rebut the prima facie case, a violation of Rule 6(e)(2) is deemed to have occurred . . . . The court then determines what remedy will be sufficient.

In re Sealed Case No. 98-3077, 151 F .3d 1059, 1067-68 (D.C. Cir. 1998) (internal citations omitted). Here, the District Court had not even reached the first stage, whether

_____

> In the case before us, the petitioner was called as a witness to testify in secret before a one-man grand jury conducting a grand jury investigation. In the midst of petitioner's testimony the proceedings abruptly changed. The investigation became a `trial,' the grand jury became a judge, and the witness became an accused charged with contempt of court -- all in secret. Following a charge, conviction and sentence, the petitioner was lead away to prison-- still without any break in the secrecy.
>
> *   *   *
>
> In view of this nation's historic distrust of secr et proceedings, their inherent dangers to freedom, and the universal requirement of our federal and state governments that criminal trials be public, the Fourteenth Amendment's guarantee that no one shall be deprived of his liberty without due process of law means at least that an accused cannot be thus sentenced to prison.

333 U.S. at 272-73.

17

the complaining party had established a prima facie case of a Fed. R. Crim. P. 6(e)(2) violation. Rather the court was making an initial determination of whether the information in the motion implicated grand jury materials.15 As we held in Smith, this initial stage may be closed so long as, upon motion, the court re-opens the adjudication pr oceedings.16 123 F.3d at 149 n.13 ("All that must be accessible to public, upon the contemnor's request, is the`final stage' of contempt proceedings."); see also Levine v. United States, 362 U.S. 610, 618 (1960) (during "final stages" of a contempt proceeding the courtroom should be "opened so that the act of contempt, and the consequent adjudication and sentence might occur in public."), r eh'g denied, 363 U.S. 858 (1960).17

5.

In sum, the District Court properly sealed the initial filings and motions so that it could deter mine whether secret grand jury information was implicated. The court held that after it determined what, if any, information was

_____

15. The Star Ledger argues that we should adopt a rule that both pre-contempt and actual contempt proceedings ar e presumptively open to the public because all stages of a contempt pr oceeding involve considerations of due process to which the public has a right to be informed. It argues that to the extent grand jury material is present in the initial stages of a contempt proceeding the court should redact any grand jury material from the otherwise open pr oceedings.

We decline to adopt such a rule. As we held in Smith, when information relating to a grand jury investigation is present in the initial stages of a contempt proceeding, there is no presumption of public access and the court must prevent the disclosur e of this secret grand jury material by sealing the proceedings. 123 F .3d at 151 ("[T]he briefs and hearing will necessarily reveal grand jury material . . . . Not only was the district court justified in sealing them, it was required to do so absent a showing of an overriding interest.").

16. Of course, during this final contempt adjudication, the court may redact any materials that reveal secr et grand jury information.

17. We need not address the Star Ledger's argument that the Smith court erred in stating that access to final contempt proceedings is limited to the alleged contemnor and does not permit access to the general public.

18

secret grand jury material, it would open the proceedings and disclose all non-grand jury materials. W e see no error.18

IV.

For the foregoing reasons, we will affir m the judgment of the District Court.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit

_____

18. On June 20, 2001 the District Court issued afinal order denying the complaining party's motion for contempt proceedings. But the District Court did not unseal all the records pertaining to the motion nor did it lift the seal on future proceedings. Under Smith, we believe the District Court should complete its review of the pr oceedings and after determining what, if any, materials contain secret grand jury information, unseal all non-secret material.