**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee*, | No. 13-35243 |
| | D.C. No. |
| v. | 12-gj-00149 |
| INDEX NEWSPAPERS LLC, DBA The Stranger, *Intervenor-Appellant*, | OPINION |
| MATTHEW DURAN, *Defendant-Appellant*. | |

Appeal from the United States District Court
for the Western District of Washington
Richard A. Jones, District Judge, Presiding

Argued and Submitted
February 5, 2014—Seattle, Washington

Filed September 5, 2014

Before:  Raymond C. Fisher, Ronald M. Gould,
and Morgan Christen, Circuit Judges.

Opinion by Judge Christen

## SUMMARY[*]

### Grand Jury / Contempt Proceedings

The panel affirmed in part and reversed in part the district court's order denying in part a newspaper's motion to unseal transcripts and filings related to grand jury witness Matthew Duran's contempt and continued confinement proceedings.

The panel held that direct appeal, rather than a petition for writ of mandamus, was the appropriate procedure for the newspaper to seek review of the district court's order; and the panel dismissed the newspaper's petition for a writ of mandamus.

The panel held that there is no First Amendment public right of access to: (1) filings and transcripts relating to motions to quash grand jury subpoenas; (2) the closed portions of contempt proceedings containing discussion of matters occurring before the grand jury; or (3) motions to hold a grand jury witness in contempt. The panel also held that the public does have presumptive First Amendment rights of access to: (1) orders holding contemnors in contempt and requiring their confinement; (2) transcripts and filings concerning contemnors' continued confinement; (3) filings related to motions to unseal contempt files; and (4) filings in appeals from orders relating to the sealing or unsealing of judicial records. The panel further held that the recognized rights of access were categorical, but were not unqualified.

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

The panel concluded that there was no substantial probability that disclosing the order holding Duran in contempt would jeopardize grand jury secrecy, and that redacting the remaining documents would adequately protect the government's compelling interest in maintaining the secrecy of the grand jury. The panel also held that it was not sufficient for documents to be declared publically available without a meaningful ability for the public to find and access those documents. Finally, because the government did not offer any alternatives, the panel held that the district court must unseal its docket to allow the public to access those transcripts and filings to which it was entitled.

The panel affirmed the district court's decision to maintain under seal: the transcript and filings related to Duran's motion to quash; the portion of the transcript of Duran's contempt proceedings during which matters occurring before the grand jury were discussed; and the motion to hold Duran in contempt. The panel remanded for the district court to unseal the electronic and paper docket filed in Duran's contempt proceeding. The panel reversed the district court's decision to maintain under seal the order holding Duran in contempt and ordering him confined, and remanded for the district court to unseal that order. The panel remanded for the district court to unseal the transcript and the filings related to Duran's confinement status hearing, the filings related to Duran's request for release, and the district court filings related to the newspaper's motion to unseal, subject to any redactions deemed necessary. The panel granted the newspaper's motion to unseal the file in this appeal, subject to possible redactions.

**COUNSEL**

Neil M. Fox (argued), Law Office of Neil Fox, PLLC, Seattle, Washington, for Invervenor-Appellant Index Newspapers LLC, dba *The Stranger*.

Kimberly N. Gordon (argued), Law Offices of Gordon & Saunders, PLLC, Seattle, Washington, for Defendant-Appellee Matthew Duran.

Michael S. Morgan (argued) and Michael W. Dion, Assistant United States Attorneys; Jenny A. Durkan, United States Attorney, Western District of Washington, Seattle, Washington, for Plaintiff-Appellee United States.

**OPINION**

CHRISTEN, Circuit Judge:

This case requires us to decide the extent to which the public's qualified right of access to court proceedings must give way to the need for secrecy when a grand jury witness is held in civil contempt and confined. We consider the district court's order granting in part and denying in part a newspaper's motion to unseal transcripts and filings related to a grand jury witness's contempt and continued confinement proceedings.

All of the parties agree that there is no public right of access to grand jury transcripts, but Index Newspapers, LLC, dba *The Stranger*, asserts that once a grand jury witness is subject to ancillary contempt proceedings, any part of the contempt hearing transcript and related filings not covered by

Federal Rule of Criminal Procedure 6(e) must be open to the public.  After full consideration of the issues raised by this case, we conclude there is a First Amendment right of access to some of the transcripts and filings related to Matthew Duran's contempt proceeding.  We have jurisdiction under 28 U.S.C. § 1291, and we affirm the district court's ruling in part, reverse in part, and remand.

## BACKGROUND

On May 1, 2012, violence broke out on the streets of downtown Seattle and demonstrators dressed in black vandalized buildings and cars.  The May Day demonstrators smashed windows, used large sticks to damage buildings, spray-painted cars, and committed other crimes.  The William Kenzo Nakamura United States Courthouse was one of the buildings damaged during the demonstration.  These events were widely publicized by the news media, and a reporter for *The Stranger*, a weekly newspaper based in Seattle, began writing about the grand jury investigation that followed.

## I.  Contempt proceedings ancillary to the grand jury investigation

Several months after the May Day demonstration, Matthew Duran and K.O. were subpoenaed to testify before the federal grand jury in the Western District of Washington.  Both Duran and K.O. filed motions to quash the grand jury subpoenas, and both motions were denied.  Duran and K.O. refused to testify before the grand jury, and separate contempt proceedings were held in the district court.  The two contempt proceedings were conducted in a nearly identical fashion, just a few hours after each witness refused to testify.  The district court began with the courtroom closed to the public and heard

testimony reciting portions of the grand jury transcript in which Duran and K.O. refused to answer questions asked of them. Next, the district court made findings of fact based on the record and then opened the courtroom. The district court announced that Duran and K.O. were in contempt and ordered them confined. The court also explained that Duran and K.O. would be released if they agreed to testify. The court's written orders stated that Duran and K.O. could be confined until either the grand jury, and all of its extensions, expired, or until eighteen months passed.[1]

During the open portion of Duran's contempt proceeding, the district court explained: "It is not [the] court's preference to have [Duran] languish for an indefinite period of time without any direct contact or communication with [the] court." The court scheduled a status hearing approximately two weeks after the contempt hearing so Duran could return to court and reconsider whether he was willing to testify. Prior to the status hearing, Duran filed a brief arguing that his confinement should be terminated.

Duran's status hearing was held in the same fashion as his contempt hearing; the first part of the hearing was closed to the public, and then the courtroom was opened. During the open portion of the status hearing, Duran's attorney explained that Duran had been held in solitary confinement almost the entire time since he was ordered confined. The district court found that Duran remained in contempt because he continued to refuse to testify, that he had access to his counsel while confined, and that his detention had not become more

---

[1] Duran unsuccessfully appealed the district court's order holding him in contempt and ordering him confined. We refer to that appeal as Duran's "recalcitrant witness appeal."

punitive than coercive. The government suggested that the district court set the next status hearing six months out or not set a date at all. Duran's counsel took the position that the court should not schedule another status hearing because her client was not going to change his mind, even after being confined for a longer period of time. In the end, the court did not schedule a follow-up status hearing, but it did reiterate that Duran was free to contact the court through counsel and that the court would make itself available to Duran if he changed his mind and decided to comply with the order directing him to testify before the grand jury.

About five months later, Duran and K.O. filed motions to terminate their confinement. They persisted in their refusal to testify but argued that confinement had become more punitive than coercive. The government opposed the motions. Six days after the motions to terminate confinement were filed, the district court issued an order requiring that Duran and K.O. be released from custody no later than the following day. The court found that Duran and K.O. had been held in solitary confinement "[f]or a substantial portion of [their] confinement," that "[t]heir physical health ha[d] deteriorated sharply and their mental health ha[d] also suffered," and that "[t]heir confinement ha[d] cost them; they ha[d] suffered the loss of jobs, income, and important personal relationships." The district court concluded it was unlikely that continued confinement would coerce Duran or K.O. to testify.

## II. *The Stranger*'s motion to unseal Duran's and K.O.'s files

All motions and accompanying papers related to grand jury proceedings are sealed as a matter of course in the

Western District of Washington. *See* Local Rules, W.D. Wash. CrR 6(j)(2) ("The Clerk's office shall accept for filing under seal without the need for further judicial authorization all motions and accompanying papers designated by counsel as related to Grand Jury matters."). Presumably due to this rule, the district court records in Duran's and K.O.'s contempt cases were sealed, including the paper and electronic docket sheets for each file.[2] That is, the public was not able to access the paper or electronic list of documents filed in either contempt case, nor were the documents themselves available for the public to view. In fact, a member of the public who tried to access either file would not have been able to find any record of either proceeding.

While Duran and K.O. were still in custody, *The Stranger* filed two nearly identical motions with the district court to unseal any portions of the district court records that did not contain matters covered by the grand jury secrecy requirements of Federal Rule of Criminal Procedure 6(e). *The Stranger*'s motions recognized that some of the relevant documents may be subject to redaction. The government opposed the motions to unseal, arguing that the materials sought were properly sealed because they disclosed "matters occurring before the grand jury." Duran and K.O. filed declarations in support of the motions to unseal, and *The Stranger* filed a reply.

The district court granted the motions to unseal in part and denied them in part. It explained that there is no public right of access to grand jury proceedings and, likewise, no

---

[2] We use the word "record" to mean the court's entire file, including all filings, the audio recordings from the hearings, and all other documents in the court's file, such as the court's log notes and orders.

public right of access to the court record of proceedings held ancillary to grand jury investigations. The court acknowledged that all records having any connection to the grand jury are not necessarily secret. Quoting Federal Rule of Criminal Procedure 6(e)(5), it stated, "a witness who the grand jury subpoenas has a 'right to an open hearing in a contempt proceeding.'" Qualifying this statement, the district court noted that the public has no right to access the portions of the contempt hearing in which grand jury secrets are disclosed, such as when grand jury testimony is read. The court explained that it was unclear exactly what *The Stranger* wanted unsealed, but it assumed that *The Stranger* wanted the court to unseal as much of Duran's contempt record as possible. The court reasoned that the record *The Stranger* sought was "a mix of secret grand jury material, grand jury material that may have lost its secrecy, legal argument, banal information, and more." It also stated that "[i]t is perhaps possible to assess every document in these files to redact secret grand jury material and divulge the remainder," but doing so "would likely [create] an incomplete and sometimes indecipherable 'court file' that would be as likely to mislead the public as to enlighten it." It ruled that the court had no obligation "to sift through these grand jury proceedings to determine what is secret and what is not."

The district court concluded:

> The public has a right to the transcripts of the open portions of the hearings, but no more. As to the written material submitted to the court in connection with the contempt proceedings, they contain grand jury information, and they are not subject to the

public right of access that applies to contempt hearings.

The district court ordered Duran's and K.O.'s files to remain sealed, but explained that "*The Stranger*, like any other member of the public, is entitled to access the transcripts of the public portions of [the contempt] hearings."

*The Stranger* petitions this court for a writ of mandamus directing the United States District Court for the Western District of Washington to unseal the portions of Duran's and K.O.'s contempt files that do not contain matters shielded by Rule 6(e). *The Stranger* also appeals from the district court's order denying in part its motion to unseal the court's record of Duran's contempt proceeding. Because we decide *The Stranger* is entitled to bring a direct appeal, we dismiss the petition for writ of mandamus. This opinion does not address the district court's order denying *The Stranger*'s motion to unseal the court's record of K.O.'s contempt proceeding because *The Stranger* did not appeal that order.

## STANDARD OF REVIEW

We review de novo whether the public has a right of access to the judicial record of court proceedings under the First Amendment, the common law, or Federal Rule of Criminal Procedure 6(e), because these are questions of law. *See Times Mirror Co. v. United States*, 873 F.2d 1210, 1212 (9th Cir. 1989). When the district court conscientiously balances the common law presumption in favor of access against important countervailing interests, we review a decision whether or not to unseal the judicial record for abuse of discretion. *See San Jose Mercury News, Inc. v. U.S. Dist. Court*, 187 F.3d 1096, 1102 (9th Cir. 1999).

## DISCUSSION

## I.  Direct appeal was the appropriate procedure for *The Stranger* to seek review of the district court's order.

*The Stranger* filed a petition for a writ of mandamus in this court.  It separately appealed the district court's order partially denying its motion to unseal the record of Duran's contempt proceeding.  We conclude that direct appeal is the appropriate mechanism for *The Stranger* to seek review of the district court's order denying, in part, *The Stranger*'s motion.

Mandamus "is a drastic and extraordinary remedy reserved for really extraordinary causes."  *Cheney v. U.S. Dist. Court*, 542 U.S. 367, 380 (2004) (quoting *Ex parte Fahey*, 332 U.S. 258, 259–60 (1947)) (internal quotation marks omitted).  This court considers the following five factors in determining whether mandamus relief is appropriate:

> (1) whether the petitioner has no other means to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in any way not correctable on appeal; (3) whether the district court's order is clearly erroneous as a matter of law; (4) whether the district court's order is an oft repeated error or manifests a persistent disregard of the federal rules; and (5) whether the district court's order raises new and important problems or issues of first impression.

*United States v. Guerrero*, 693 F.3d 990, 999 (9th Cir. 2012) (citing *Bauman v. U.S. Dist. Court*, 557 F.2d 650, 654–55

(9th Cir. 1977)).  "[M]andamus may not issue so long as alternative avenues of relief remain available."  *Cheney*, 542 U.S. at 379.

The first consideration for determining whether to issue a writ of mandamus is whether "the party seeking issuance of the writ [has any] other adequate means to attain the relief he desires—a condition designed to ensure that the writ will not be used as a substitute for the regular appeals process."  *Id.* at 380–81 (citation and internal quotation marks omitted).  *The Stranger* filed both a petition for writ of mandamus and an appeal of the district court's order because it concluded: "It is not clear whether this Court has jurisdiction to hear this appeal, or whether the only remedy is by means of mandamus review."  *The Stranger* was unsure it could appeal because it was not a party to Duran's contempt proceeding, and it was uncertain whether the district court's order denying its motion to unseal was a final appealable order.  *The Stranger* hedged its bets and argued that, if mandamus was not the exclusive route to review, then the district court's order must be final and appealable.  The government argued that the district court's order was a final order subject to appellate review, and that our court should not consider the petition for writ of mandamus.

Though *The Stranger* initially professed concern that it lacked party status, *The Stranger* and the government agreed at oral argument before our court that *The Stranger* "intervened" in Duran's contempt proceeding.  This fact is not immediately apparent from the record, but the local civil rules do permit non-parties to file motions to unseal, and the district court treated *The Stranger* as an intervenor.  *See* Local Rules, W.D. Wash. LCR 5(g)(8) ("A non-party seeking access to a sealed document may intervene in a case for the

purpose of filing a motion to unseal the document.").**³**  Both the Supreme Court in *Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211 (1979), and our court in *In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778 (9th Cir. 1982), allowed non-parties to appeal when their petitions to the district court for information related to a grand jury investigation were denied.  *See Douglas Oil*, 441 U.S. at 216–17; *Special Grand Jury*, 674 F.2d at 779–80.

Here, mandamus is unavailable because the district court's order was a final, appealable order.  Duran's motion for termination of confinement was granted on February 27, 2013, and he was released.  The order granting his release ended Duran's civil contempt proceeding.  The same day the release order was issued, the district court denied *The Stranger*'s motion for reconsideration of its order partially denying *The Stranger*'s motion to unseal Duran's contempt record.  There will be no further order or appealable final judgment from which *The Stranger* can seek review because the district court's order on *The Stranger*'s motion "finally adjudicated the matter presented" and "resolved all issues that were raised."  *Times Mirror*, 873 F.2d at 1212 (citation and internal quotation marks omitted).

Direct appeal is available because the district court's order "dispose[d] of all of the contentions [raised by *The Stranger*] and terminate[d] a separate proceeding pending before the grand jury court."  *Douglas Oil*, 441 U.S. at 233

---

**³** In contrast, an outside party cannot intervene in a grand jury proceeding.  *See In re Special Grand Jury (for Anchorage, Alaska)*, 674 F.2d 778, 782 (9th Cir. 1982) ("The Rules of Criminal Procedure include no provision that authorizes, on its face, intervention by a member of the public in a grand jury proceeding.").

(Rehnquist, J., concurring).  This is consistent with a recent decision by our court concluding that we have jurisdiction to review "an order denying a motion to unseal or seal documents" filed in the district court because such an order "is appealable either as a final order under 28 U.S.C. § 1291 or as a collateral order."  *Oliner v. Kontrabecki*, 745 F.3d 1024, 1025 (9th Cir. 2014) (quoting *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1129 (9th Cir. 2003)) (internal quotation marks omitted).  Because *The Stranger* had the ability to appeal the district court's order on its motion to unseal the record of Duran's contempt proceeding, it may not obtain mandamus relief.  *See Cheney*, 542 U.S. at 379 (where other relief is available, "mandamus may not issue").  We therefore dismiss the petition for writ of mandamus and consider *The Stranger*'s appeal.

## II.  The public's right of access to the record of contempt proceedings held ancillary to a grand jury investigation

In its motion to unseal Duran's contempt file, *The Stranger* requested public "access to the court files regarding the contempt citations related to Matthew Duran . . . , the transcripts of the contempt hearings, and any briefing."  *The Stranger* acknowledged that some of Duran's contempt file would be shielded by Rule 6(e), and the district court assumed *The Stranger* wanted the court to unseal as much of the record as possible.

On appeal, *The Stranger* clarified that its request includes public access to the district court's docket related to Duran's

contempt proceeding.[4]   The request also includes public access to the following three classes of filings and transcripts: (1) Duran's motion to quash his subpoena; (2) Duran's contempt hearing and the subsequent hearing related to Duran's continued confinement; and (3) *The Stranger*'s motion to unseal the record of Duran's district court contempt proceeding. *The Stranger* asserts that the public has a right of access to these filings and transcripts under the First Amendment, the common law, and Rule 6(e).   The government responds that because matters occurring before the grand jury are secret under Rule 6(e), and because matters occurring before the grand jury are necessarily discussed in contempt proceedings conducted ancillary to grand jury investigations, there is no public right of access to the categories of documents and transcripts sought by *The Stranger*.

America has a long history of distrust for secret proceedings. *See In re Oliver*, 333 U.S. 257, 268–69 (1948) ("[D]istrust for secret trials has been variously ascribed to the notorious use of this practice by the Spanish Inquisition, to the excesses of the English Court of Star Chamber, and to the French monarchy's abuse of the *lettre de cachet*." (footnotes omitted)).   Pursuant to the First Amendment, there is a presumed public right of access to court proceedings. *See Oregonian Publ'g Co. v. U.S. Dist. Court*, 920 F.2d 1462, 1465 (9th Cir. 1990).   Secret proceedings are the exception rather than the rule in our courts. *See id.*   Nevertheless, one very well established exception is grand jury proceedings. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8–9

---

[4] In this opinion, we use the word "docket" to refer to the electronic and paper list of documents filed with the courts, not the documents themselves.

(1986) (*Press-Enterprise II*).  Because the grand jury is an integral part of the criminal investigatory process, these proceedings are always held in secret.  *See id.*  This secrecy is justified by the need to encourage witnesses to come forward voluntarily without fear that those whom they testify against will know they did so, to encourage witnesses to testify fully, to ensure that targets of a grand jury investigation do not flee or try to influence grand jurors, and to assure that individuals who are accused but exonerated are not held to public ridicule.  *See Douglas Oil*, 441 U.S. at 218–19.

The Supreme Court has instructed that the following two questions should be asked to determine whether the First Amendment right of access applies to a particular proceeding: (1) "whether the place and process have historically been open to the press and general public," and (2) "whether public access plays a significant positive role in the functioning of the particular process in question."  *Press-Enterprise II*, 478 U.S. at 8.  This test is commonly referred to as the "experience and logic test."  *See, e.g.*, *id.* at 9.  The same test applies to the disclosure of "*documents* generated as part of a judicial proceeding."  *Times Mirror*, 873 F.2d at 1213 n.4. If we conclude that there is a First Amendment right of access to any of the documents encompassed by *The Stranger*'s request, we must "then determine whether any such right is overcome by a compelling governmental interest."  *In re Copley Press, Inc.*, 518 F.3d 1022, 1026 (9th Cir. 2008).

We also "consider whether the common law gives the public a right of access separate from the First Amendment." *Id.*  The public's common law right of access is not absolute and it does not extend to records that have "traditionally been kept secret for important policy reasons."  *Times Mirror*,

873 F.2d at 1219. In particular, our court has held that the common law right to public records and documents does not extend to grand jury transcripts or to sealed search warrant materials during a pre-indictment investigation. *United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 (9th Cir. 2011).

Applying the experience and logic test to each category of documents sought by *The Stranger*, we conclude there is no First Amendment public right of access to: (1) filings and transcripts relating to motions to quash grand jury subpoenas; (2) the closed portions of contempt proceedings containing discussion of matters occurring before the grand jury; or (3) motions to hold a grand jury witness in contempt. We do not consider whether there is a separate common law right of access to these documents because any such presumption in favor of access is outweighed by the compelling government interest in maintaining grand jury secrecy.

In contrast, the public does have presumptive First Amendment rights of access to: (1) orders holding contemnors in contempt and requiring their confinement; (2) transcripts and filings concerning contemnors' continued confinement; (3) filings related to motions to unseal contempt files; and (4) filings in appeals from orders relating to the sealing or unsealing of judicial records. These rights of access are categorical and do not depend on the circumstances of any particular case.

Although the rights of access we recognize today are categorical, they are not unqualified. Courts must carefully consider whether closure or sealing is nevertheless required to prevent harm to a compelling interest, which in this context will likely be the need to maintain the secrecy of grand jury

information and the need to avoid compromising grand jury investigations.  This inquiry will turn on the circumstances of each particular case, including whether the grand jury investigation is ongoing and, if not, how much time has passed since its completion.  In this case, we conclude there is no substantial probability that disclosing the order holding Duran in contempt will jeopardize grand jury secrecy, and that redacting the remaining documents will adequately protect the government's compelling interest in maintaining the secrecy of the grand jury.  Because we recognize a First Amendment right of access to these documents, we do not consider whether they are also subject to the common law presumption in favor of access.

Finally, we hold that it is not sufficient for documents to be declared publically available without a meaningful ability for the public to find and access those documents.  Because the government has not offered any alternatives, we hold that the district court must unseal its docket to allow the public to access those transcripts and filings to which it is entitled.

We address each category of requested documents in turn.

### A.  The filings and transcript of the hearing related to Duran's motion to quash his grand jury subpoena

*The Stranger* argues that the public has a right of access under the First Amendment, the common law, and Rule 6(e) to the briefing, orders, and transcripts related to Duran's motion to quash his grand jury subpoena.  In this instance, the documents in the court's file include Duran's motion to quash, the government's opposition, Duran's reply brief, the district court's order denying Duran's motion, and the transcript of the hearing on the motion to quash.

Federal Rule of Criminal Procedure 6(e) addresses the secrecy obligation imposed on participants in grand jury proceedings. Rule 6(e)(5) states, "Subject to any right to an open hearing in a contempt proceeding, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury." As for documents related to the grand jury, Rule 6(e)(6) provides, "Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal to the extent and as long as necessary to prevent the unauthorized disclosure of a matter occurring before a grand jury." Rule 6(e) secrecy extends beyond grand jury transcripts and includes summaries and discussions of grand jury proceedings. *See U.S. Indus., Inc. v. U.S. Dist. Court*, 345 F.2d 18, 20–21 (9th Cir. 1965).

Under the plain language of Rule 6(e)(5) and (6), it was not an abuse of discretion for the district court to decline to unseal the court's record and file related to Duran's motion to quash his grand jury subpoena. The motion was filed when the grand jury investigation was ongoing and it was predictable that the briefs and oral argument concerning the motion to quash would contain information about matters occurring, or anticipated to occur, before the grand jury. At a minimum, the briefs and argument would have confirmed that a grand jury investigation was being conducted, that Duran had been subpoenaed, and the reasons the government suspected Duran had information pertinent to the crimes being investigated. Inevitably, such disclosure would have risked revealing where the investigation was heading, which, in turn, might have thwarted the investigation by tipping off its subjects or by revealing other potential witnesses. Such disclosures could implicate the safety of potential witnesses, reveal offers of immunity made to those witnesses, or lead to the destruction of evidence. These considerations and others

have been noted by the Supreme Court.  *See Douglas Oil*, 441 U.S. at 218–19 & n.10 (secrecy justified by need to prevent escape by those under investigation, ensure freedom of the grand jury in its deliberations, encourage witnesses to testify voluntarily and fully, ensure targets under investigation do not flee or influence grand jurors, and assure those accused, but exonerated, are not held to public ridicule).

Having concluded that the transcript and filings related to Duran's motion to quash fall within the scope of Rule 6(e)'s secrecy protection, we consider whether the public nonetheless has a right of access to those documents.[5]  We apply the experience and logic test to determine whether the public has a First Amendment right to the transcript and filings related to Duran's motion to quash.  Determining whether there is a public right of access requires looking at the class of proceedings as a whole, not the particular

---

[5] We acknowledge that federal courts generally do not reach constitutional questions if cases can be resolved on other grounds.  *See, e.g.*, *Bus. of Custer*, 658 F.3d at 1190.  But the common law public right of access analysis considers whether judicial records have "traditionally been kept secret for important policy reasons."  *Times Mirror*, 873 F.2d at 1219.  As discussed in Part II.B of this opinion, in the context of documents related to the grand jury, that analysis provides little guidance because the tradition of secrecy is either inconsistent or nonexistent.  To further our goal of providing clarity to the district court, we begin with the First Amendment analysis.  Our court has taken this approach in other cases involving the public's right of access to judicial records.  *See Copley*, 518 F.3d at 1026; *Times Mirror*, 873 F.2d 1212–13.  Because we conclude the public has a First Amendment right of access to some of the documents at issue in this case, we need not consider whether such documents also fall within the scope of the public's common law right of access.  We also do not decide whether the public has a common law right of access to the requested documents to which it does *not* have a First Amendment right of access because we conclude that any such right of access is outweighed by the need for grand jury secrecy.

proceedings at issue in this case. *See Oregonian*, 920 F.2d at 1465. *The Stranger* cites no authority supporting its implied contention that motions to quash grand jury subpoenas have traditionally been open to the public, nor can we find any. At best, the advisory notes to Rule 6(e)(5) explain that courts are not consistent when it comes to opening hearings concerning grand jury witness immunity or granting access to orders compelling grand jury witnesses to comply with subpoenas, and that such "open hearings often seriously jeopardize grand jury secrecy."**[6]**

Logic dictates that the record of proceedings concerning motions to quash grand jury subpoenas should be closed. As noted, there are several compelling reasons why grand jury proceedings should be kept secret, including protecting the integrity of the grand jury investigation and the safety of witnesses. *See Douglas Oil*, 441 U.S. at 218–19 & n.10. *The Stranger* and Duran argue that these reasons do not apply in this case, but the fact that some of these reasons are not as compelling in the context of this particular contempt proceeding—because Duran did not wish to remain anonymous—is not dispositive. We do not doubt that the contempt proceeding and subsequent period of confinement had an enormous consequence for Duran, but he is not the only one with an interest in maintaining the secrecy of the grand jury. The court has an interest in the integrity of the proceedings and the safety of those involved, the government

---

**[6]** The Second Circuit inferred that hearings on a motion to quash a grand jury subpoena may be sealed under Rule 6(e)(5). *See In re Grand Jury Subpoena*, 103 F.3d 234, 238 (2d Cir. 1996) (noting that the commentary to the rule "provides two examples of hearings which may be closed under 6(e)(5) . . . : a motion to quash a grand jury subpoena, and a motion for an immunity order").

has an interest in the outcome of its investigation, and the public has an interest in the fairness of the grand jury investigatory process. Duran's personal decision to disclose what he may have learned about the grand jury investigation does not compel disclosure or unsealing of the court's filings or hearing transcripts related to the grand jury. It is well established that unsealing this type of record can have broad implications.

Because Duran had not yet appeared before the grand jury at the time of the hearing on his motion to quash, *The Stranger* argues that Duran's briefs pertaining to the motion, and the government's response, "should be unsealed because none of these documents could possibly contain references to grand jury secrets." This argument is unpersuasive. From the record available to us, the very fact that Duran had been subpoenaed as a grand jury witness was a grand jury secret at the time of the hearing on the motion to quash.[7] Duran and *The Stranger* also argue that once the contempt hearing was opened, the district court should have retroactively unsealed the motion to quash Duran's grand jury subpoena. But *The Stranger* and Duran do not cite any authority for this proposition, and we do not know of any.

It is true that public disclosure of judicial records often enhances the public's trust in the process. *See Press-Enterprise II*, 478 U.S. at 7–8. However, it is well established that the harm caused by disclosure of certain judicial records more than outweighs any benefit caused by such disclosure. *See id.* at 9 ("[T]he proper functioning of

---

[7] None of the articles *The Stranger* and Duran submitted to this court, which discuss the fact that Duran had been subpoenaed, are dated prior to the motion to quash hearing.

our grand jury system depends upon the secrecy of grand jury proceedings."). Here, any positive role the public might play in ensuring the fair resolution of a motion to quash a grand jury subpoena would be "more than outweighed by the damage to the criminal investigatory process" of the grand jury, *Times Mirror*, 873 F.2d at 1215, because information related to a grand jury investigation must be considered by a court ruling on a motion to quash. Where the harm caused by disclosure of judicial records outweighs the benefit of disclosure to the public, public access no longer "plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, 478 U.S. at 8. To be sure, the closure of court proceedings is the exception rather than the rule, but grand jury secrecy is a long-standing and important exception that is codified in Rule 6(e) for good reason.

Application of the experience and logic test yields the conclusion that there is no First Amendment public right of access to the filings and transcripts related to a motion to quash a grand jury subpoena while the grand jury investigation is ongoing. We do not need to decide whether there is a common law right of access to filings and transcripts related to a motion to quash this type of subpoena because, even if there were, the government's interest in grand jury secrecy and the justifications identified in *Douglas Oil* constitute "sufficiently important countervailing interests" to overcome any common law "presumption in favor of access." *See San Jose Mercury News*, 187 F.3d at 1102. The district court did not err by maintaining under seal the filings

and transcript related to the hearing on Duran's motion to quash his grand jury subpoena.[8]

## B. The transcripts and filings related to Duran's contempt proceeding held ancillary to the grand jury's investigation

The second category of documents *The Stranger* seeks consists of the filings and transcripts related to Duran's contempt hearing and those related to Duran's continued confinement hearing.[9]

---

[8] Our holding is specifically limited to the public's right of access while the grand jury investigation is ongoing.  This is consistent with Rule 6(e)(6), "Records, orders, and subpoenas relating to grand-jury proceedings must be kept under seal *to the extent and as long as necessary* to prevent the unauthorized disclosure of a matter occurring before a grand jury" (emphasis added).  This is also consistent with *Times Mirror Co. v. United States*, 873 F.2d at 1216, which found no First Amendment right of access to "search warrant proceedings and materials *while a pre-indictment investigation is still ongoing*" (emphasis added).  We do not reach whether, or when, a public right of access to the filings and transcripts related to a motion to quash a grand jury subpoena might arise after the conclusion of a grand jury investigation and any resulting criminal proceedings.

[9] These documents include: the motion to hold Duran in contempt; the transcript of the contempt hearing; the order holding Duran in contempt; the transcript of the confinement status hearing; Duran's memorandum of law governing termination of the order of confinement (filed prior to the status hearing); Duran's motion to end confinement; Duran's declaration in support of his motion to end confinement; the government's opposition to the motion to end confinement; and the district court's order ending confinement.

### 1.  The transcript of Duran's contempt hearing

The district court's order partially granting and partially denying *The Stranger*'s motion to unseal stated, "*The Stranger*, like any other member of the public, is entitled to access the transcripts of the public portions of [the contempt] hearings."  But *The Stranger* sought the transcript of the open *and* closed portions of Duran's contempt hearing to the extent it did not contain material covered by Rule 6(e), and it asked that the transcript be unsealed and opened to the public. Duran also wanted an open contempt hearing, and he joined in the request for the transcript to be made public.[10]

To determine whether the public has a First Amendment right to access the transcript of the closed portion of Duran's contempt hearing, we apply the experience and logic test.  *See Press-Enterprise II*, 478 U.S. at 8.  The Supreme Court has decided two cases related to the experience prong of this test. In 1948, the Supreme Court decided *In re Oliver* and ruled that "[w]itnesses who refuse to testify before grand juries are tried on contempt charges before judges sitting in open court."  333 U.S. at 265; *see also id*. at 277–78.  This is consistent with Rule 6(e)(5), which states that the closure of hearings related to the grand jury is "[s]ubject to any right to an open hearing in a contempt proceeding."  But twelve years later, in *Levine v. United States*, the Supreme Court ruled that due process was not violated by the district court's failure to open the courtroom for the final stage of the contempt

---

[10] *The Stranger*'s motion assumed that the audio recordings of the court's hearings had been transcribed.  To avoid confusion, we use the word "transcript" to mean a transcript that has been created from an audio recording or during a hearing or grand jury session.  We construe "access to a transcript" to include permission to have a hearing transcribed.

proceedings. *See* 362 U.S. 610, 618–19 (1960). That said, the *Levine* Court also noted that "due process demands appropriate regard for the requirements of a public proceeding in cases of criminal contempt," *id.* at 616 (citing *Oliver*, 333 U.S. 257), and that if the contemnor in that case had requested that the courtroom be opened to the public before the final stage of the proceedings, "[it] would have a different case," *id.* at 618. *Oliver*, *Levine*, and Rule 6(e)(5) suggest there is no hard-and-fast tradition that contempt hearings held ancillary to a grand jury investigation must be public. Instead, it appears that whether these hearings have been open to the public has been largely dependent on the circumstances of each case.

Logic may require that a portion of a contempt hearing transcript be accessible to the public where there has been a request to make the hearing public, where the witness does not object, and where the court is satisfied that opening the hearing will not thwart the grand jury's investigation or jeopardize other witnesses or evidence. A grand jury witness's right to, and the public's interest in, an open contempt hearing arises in part because a civil contempt hearing "better resembles a criminal trial . . . than it does a grand jury proceeding." *Cf. Guerrero*, 693 F.3d at 1001. Civil contempt, like criminal contempt, may subject a witness to confinement. *See* 28 U.S.C. § 1826(a). A witness is entitled to the presence of counsel, notice, and an opportunity to present a defense. *See United States v. Alter*, 482 F.2d 1016, 1022–23 & n.11 (9th Cir. 1973). Civil contempt is designed to coerce a witness's testimony and confinement must end if the contemnor complies. *See United States v. Rose*, 806 F.2d 931, 933 (9th Cir. 1986). But as we have explained, the coercive force of confinement pursuant to such an order can be extreme: a witness may be jailed for eighteen

months.  28 U.S.C. § 1826(a).  The public plays a significant positive role in contempt proceedings by providing a watchful eye when the court considers a prosecutor's request that a witness be held in contempt and confined.  The advisory committee notes to Rule 6(e)(5) acknowledge that the rule "accommodate[s] any First Amendment right which might be deemed applicable in that context because of the proceedings' similarities to a criminal trial."

But logic requires that at least part of a contempt hearing transcript should remain inaccessible to the public.  The Supreme Court has held that there is "no right to have the general public present while the grand jury's questions [are] being read," *Levine*, 362 U.S. at 618, and contempt hearings ancillary to grand jury investigations will usually require at least some disclosure of grand jury questions to establish a witness's refusal to answer.  A grand jury witness may refuse to testify for "just cause" and "a court must allow [the witness] the opportunity to present reasons for [the] refusal to testify."  *United States v. Powers*, 629 F.2d 619, 626 (9th Cir. 1980).  Thus, the portions of a contempt hearing in which the government introduces evidence to support its request for a contempt finding, and in which the witness attempts to show just cause for refusing to testify, will likely involve some disclosure of information traditionally cloaked by Rule 6(e). This information may include the subject of the grand jury investigation, future targets of the grand jury, or other information that, if disclosed, could undermine an ongoing investigation.

In *In re Copley Press, Inc.*, our court indicated that access to a hearing on a motion to seal was not an all-or-nothing proposition.  518 F.3d at 1027–28.  *Copley* involved a closed plea hearing in which a man accused of running a drug cartel

in Mexico agreed to cooperate with the government. *Id.* at 1024–25. A newspaper sought all of the documents related to the government's motion to seal, and the transcript of the hearing on that motion. *Id.* at 1025. Citing safety concerns, our court held there was a public right of access to open portions of the hearing regarding the government's motion to seal but no right of access to closed portions of the same hearing. *Id.* at 1027–28. The result in *Copley* is entirely consistent with the general presumption in favor of public access to court proceedings, and with the need to limit that access when compelling interests, such as witness safety, require secrecy. The procedure the district court employed in this case paralleled the procedures followed in *Copley*.

Given the compelling need to keep matters occurring before the grand jury secret, we conclude that there is no First Amendment public right of access to those portions of the transcript of Duran's contempt hearing that contain grand jury testimony or information regarding the grand jury investigation, *i.e.*, the closed portion of the hearing. *See Levine*, 362 U.S. at 618. We decline to decide whether there is a common law right of access to the transcripts of the closed portion of the contempt hearing because, even if there is such a right, the government's interest in grand jury secrecy is a "sufficiently important countervailing interest[]" that overcomes any common law "presumption in favor of access." *San Jose Mercury News*, 187 F.3d at 1102. We affirm the district court's decision to keep sealed the portion of the transcript of Duran's contempt hearing when substantive grand jury matters were discussed.

We also agree with the district court's decision to open the courtroom to the public when the court announced that Duran was in contempt and ordered his confinement. The

government agrees that the district court's decision to open the courtroom at this stage of the hearing was consistent with *Levine*. The district court determined that the grand jury investigation would not be compromised by opening this part of the hearing, and Duran requested a public hearing. Once the hearing was opened, the court explained the terms of the order under which Duran was to be confined and scheduled Duran's next hearing date, making clear that Duran had the ability to request an earlier hearing if he decided to testify. The district court's decision tacitly acknowledged that public access to this part of the hearing provides an important check on the court and the government; opening the courtroom ensured that Duran was confined under circumstances that would permit the public to have notice of his confinement.[11] *See Press-Enterprise Co. v. Superior Court*, 464 U.S. 501, 508 (1984) (*Press-Enterprise I*) ("Openness thus enhances both the basic fairness of the criminal trial and the appearance of fairness so essential to public confidence in the system.").

Our holding is consistent with those of at least three of our sister circuits. *See In re Grand Jury Subpoena*, 97 F.3d 1090, 1094–95 (8th Cir. 1996) (affirming the district court's

---

[11] *The Stranger* argues that at least one member of the public was excluded from the courtroom even after the district court ordered that Duran's contempt hearing would be opened. Duran argues that his "due process right to public proceedings was implicated by the continued closure of court even after the Court ordered that the closure cease." *The Stranger* and Duran base these arguments on a media report and a declaration from K.O.'s attorney alleging that members of the public tried to get through security to attend the contempt hearing but were denied access. The government disputes that the public was denied access after the courtroom was opened. We do not reach this issue because the district court ruled that the transcript of the public portion of the hearing shall be available to the public, and we affirm that ruling.

decision to close a contempt hearing while grand jury questions were read and to open the hearing for the adjudication of contempt); *In re Grand Jury Matter*, 906 F.2d 78, 86–87 (3d Cir. 1990) ("[A] civil contempt proceeding . . . may be closed to the public only to the extent that substantive grand jury matters are being considered; the remainder of the hearing must take place in open court."); *In re Rosahn*, 671 F.2d 690, 697 (2d Cir. 1982) ("[A] contempt trial may properly be closed to the public when substantive grand jury matters are being considered, [but] no reason is advanced for preventing a defendant from having the rest of his trial in public."). Given Duran's consent, our decision is also consistent with Rule 6(e)(5). *See* Fed. R. Crim. P. 6(e)(5) ("*Subject to any right to an open hearing in a contempt proceeding*, the court must close any hearing to the extent necessary to prevent disclosure of a matter occurring before a grand jury." (emphasis added)). We decline to decide what might occur if a grand jury witness desired the proceedings to remain closed; that decision is best left for another case.[12]

---

[12] We stress that whether the transcript of a contempt hearing ancillary to a grand jury investigation should be available to the public is necessarily a case-by-case determination. There may be circumstances where the disclosure of a witness's identity could compromise the grand jury investigation or put other witnesses in danger. In each case, a court must consider these risks and balance the interests of the government, the grand jury witness, and the public. *Cf. Copley*, 518 F.3d at 1028 (reiterating that even when the public has a qualified right of access to a document, that right can be overcome). The court should also consider the timing of a motion to unseal. Such a motion could be filed before a grand jury investigation and any subsequent prosecutions have been completed; but it could also be filed years after the fact. Temporal proximity to the grand jury's work will likely have a significant impact on the court's analysis of the public's right of access.

Here, the district court intended to make the transcript of the open portion of the contempt hearing available to the public. The court ruled, "*The Stranger*, like any other member of the public, is entitled to access the transcripts of the public portions of [the contempt] hearings." But it appears that the court's entire record of Duran's contempt proceeding was sealed in accordance with the Western District of Washington local rule CrR 6(j), and there was no publically available docket. Nor was there any public indication that a contempt file existed. Thus, in practice, the public had no way of accessing the transcript the court intended to unseal. The government objects to unsealing the district court docket, but at oral argument before our court it could not explain how the public could access the open portion of the contempt hearing transcript without access to the docket. We remand for the district court to unseal the docket, thus making the paper and electronic index of Duran's contempt file accessible. In doing so, the district court shall consider any redactions the government may request, consistent with this opinion.[13]

### 2. The filings related to Duran's contempt proceedings held ancillary to a grand jury investigation

In addition to the transcript of Duran's contempt hearing, *The Stranger* requests that the filings related to Duran's contempt hearing be unsealed. These filings include the

---

[13] Because we order the district court to unseal its docket, *The Stranger*'s July 12, 2013 motion to unseal the district court docket is moot.

motion to hold Duran in contempt and the order holding Duran in contempt and ordering him confined.[14]

The district court ruled that the public had no right of access to these filings because they contain grand jury information and "neither the court nor the Government has an obligation to sift through these grand jury proceedings to determine what is secret and what is not." We disagree. Given the important interests at issue, a district court generally does have a duty to consider what must remain secret and what can be unsealed when a motion to unseal is filed. *See United States v. Smith*, 123 F.3d 140, 143–44 (3d Cir. 1997) ("Under such circumstances, *in camera* review of the disputed material is necessary.").

As required by our precedent, we apply the experience and logic test to determine whether there is a First Amendment right of access to the filings related to Duran's contempt hearing.[15] We are aware of no controlling authority

---

[14] Duran joins in this request. He argues that his First Amendment right to associate is infringed because he will face "suspicion and ostracism" from activist and social justice communities if they are not able to review his grand jury file. Apart from a brief discussion with several conclusory assertions, Duran provides no authority supporting this argument, and we deem it waived. *See Indep. Towers of Wash. v. Washington*, 350 F.3d 925, 929–30 (9th Cir. 2003) (inadequately briefed arguments are deemed waived).

[15] *The Stranger* cites *Associated Press v. U.S. District Court*, 705 F.2d 1143 (9th Cir. 1983), and argues that because at least part of Duran's contempt hearing was public, the public should also have access to the filings associated with the hearing because they are necessary to understand the hearing. *Associated Press* involved the widely publicized criminal prosecution of John DeLorean in which the district court sua sponte ordered all filings to be sealed. *Id.* at 1144. Several news

addressing whether the public has a right of access to filings related to contempt hearings held ancillary to a grand jury investigation.  Despite our tradition of public access, grand jury proceedings have historically been secret, as we have explained.  *See Guerrero*, 693 F.3d at 1001.[16]

A motion to hold a grand jury witness in contempt will likely recite some information related to the grand jury as support for the government's request that the witness be held in contempt.  As such, public access to those types of motions could "frustrate criminal investigations and thereby jeopardize the integrity of the search for truth that is so

---

organizations petitioned the Ninth Circuit for a writ of mandamus directing the district court to vacate its order.  *Id.* at 1145.  Our court applied the experience and logic test to determine whether the district court's order in *Associated Press* should be vacated.  *See id.*  Contrary to *The Stranger*'s suggestion, we did not use the public's ability to understand an open hearing as the litmus test for deciding whether the public should have access to the filings associated with the hearing.

*The Stranger* also cites *Newsday LLC v. County of Nassau*, 730 F.3d 156 (2d Cir. 2013).  In *Newsday*, the Second Circuit reiterated that circuit's rule to determine whether a judicial document is subject to the public's right of access under the First Amendment: "whether the documents at issue are derived from or are a necessary corollary of the capacity to attend the relevant proceedings."  *Id.* at 164 (citation and internal quotation marks omitted).  This is not the test in our circuit. *Compare id.*, with *Associated Press*, 705 F.2d at 1145.

[16] One Third Circuit case discusses the public's right of access to filings related to contempt hearings held ancillary to a grand jury investigation. *See In re Newark Morning Ledger Co.*, 260 F.3d 217 (3d Cir. 2001).  In this case, the district court was "at the preliminary stage of sorting out whether secret grand jury material was implicated," *id.* at 227, and merely sealed the record while it decided whether material protected by Rule 6(e) was at issue, *id.* at 227–28.  The Third Circuit affirmed.  *Id.* at 228.  The decision we reach today is consistent with the Third Circuit's approach.

critical to the fair administration of justice." *Times Mirror*, 873 F.2d at 1213. This is especially true while a grand jury investigation is ongoing. Given the importance of secrecy to a grand jury investigation, we conclude there is no First Amendment or common law public right of access to a motion to hold a grand jury witness in contempt while the grand jury investigation is ongoing. We affirm the district court's decision to maintain the written motion to hold Duran in contempt under seal.

We reach a different conclusion regarding the order holding Duran in contempt and ordering him confined. Logic dictates that at least some of the filings related to contempt hearings ancillary to grand jury investigations may be open to the public because of the hearings' similarities to criminal trials. *Cf. Guerrero*, 693 F.3d at 1001. As discussed, "public access plays a significant positive role in the functioning" of the portion of a contempt hearing when a witness is held in contempt and ordered confined. *See Press-Enterprise II*, 478 U.S. at 8. It necessarily follows that the order of contempt and confinement should be accessible, at least when the grand jury witness does not object and the court determines that the grand jury investigation will not be compromised. This is so whether the order is rendered orally or in writing. Public access to this part of the record provides a check on the process by ensuring that the public may discover when a witness has been held in contempt and held in custody. We conclude the public has a presumptive First Amendment right to the district court's order finding Duran in contempt and ordering him confined.

Nevertheless, this public right of access may be overcome if: (1) the government has a compelling interest; (2) there is a substantial probability that the interest will be harmed by

disclosure; and (3) there are no adequate alternatives to maintaining the filings under seal. *See Copley*, 518 F.3d at 1028. The government's interest in maintaining grand jury secrecy is compelling but there is not necessarily a substantial probability that this interest will be harmed by the disclosure of a contempt and confinement order. Even if there is such a probability, redaction, as an alternative to closure, must be considered before the public is denied access to the information that a person was held in contempt and remanded to custody.

Here, we have reviewed the order holding Duran in contempt and conclude that there is no probability that unsealing it will harm the government's interest in maintaining the secrecy of grand jury proceedings. Accordingly, no redaction is necessary and this document shall be unsealed on remand.[17]

---

[17] *The Stranger* also requests that the filings related to Duran's recalcitrant witness appeal be unsealed. As an initial matter, we note that *The Stranger* represented that it obtained a copy of the memorandum disposition from Duran's recalcitrant witness appeal on the Internet and subsequently filed it in the unsealed mandamus action related to this case. The government did not object to that filing or request that we seal the mandamus case file. It does not appear that Duran or *The Stranger* requested that the merits panel in Duran's recalcitrant witness appeal unseal the other filings in that appeal. To the extent *The Stranger*'s request to unseal the filings in the recalcitrant witness appeal is not moot because of the public availability of the memorandum disposition, *The Stranger* must separately request that the file in that appeal be unsealed. It is not appropriate to seek that disclosure in this case.

### 3.  The transcript and filings related to Duran's continued confinement

*The Stranger* also requests documents related to Duran's continued confinement.  These filings include Duran's memorandum of law governing termination of the district court's order of confinement, the transcript of Duran's September 26, 2012 confinement status hearing, Duran's motion to terminate his confinement, his declaration in support of the motion, the government's opposition, and the district court's February 27, 2013 order releasing Duran. There was no hearing on Duran's motion to end confinement, so there is no accompanying transcript or audio recording.

The district court allowed *The Stranger* to have access to transcripts of the public portions of Duran's contempt hearing and confinement status hearing.  But like the transcript of Duran's contempt hearing, the transcript of his confinement status hearing remains hidden from public view because the docket for Duran's file was sealed as a matter of course.  *See* Local Rules, W.D. Wash. CrR 6(j).  As discussed, on remand the district court shall unseal the docket.  This will allow the public to access the open portion of the confinement status hearing.

We interpret *The Stranger*'s request for access to the transcript of Duran's confinement status hearing to include as much of the closed portion of that hearing as possible.  We are not aware of any federal cases addressing access to a continued confinement hearing or to filings related to a request for release, and the parties do not cite any.  Thus, the test for a common law right of access sheds no light on this analysis.  But as far as the First Amendment right is

concerned, "logic alone, even without experience, may be enough to establish the right." *Copley*, 518 F.3d at 1026.

Logic favors greater public access to these transcripts and filings because they are less likely to disclose sensitive matters relating to the grand jury's investigation and are more likely to focus on the conditions of Duran's confinement and his willingness to testify. The grand jury investigation was not the subject of Duran's confinement hearing; the court was concerned with whether continued confinement would coerce his testimony, or whether his confinement had become punitive. These filings were temporally distant from the grand jury proceedings and were less likely to contain discussions about matters occurring before the grand jury. Further, by the time the confinement hearing was held, Duran's status as a grand jury witness had been publically reported.[18] We do not suggest there is a point at which a court's file must be presumptively unsealed. Rather, when a motion to unseal is filed and ancillary proceedings have become attenuated from the grand jury, the district court has a duty to conduct an analysis to determine whether particular types of filings should be unsealed. Here, we conclude under the experience and logic test that the public has a presumptive qualified right of access under the First Amendment to the transcript and filings related to Duran's continued confinement.

---

[18] Mike Carter, *Man Ordered Held for Refusing to Testify on May Day Violence*, The Seattle Times (Dec. 14, 2012, 3:38 PM), http://blogs.seattletimes.com/today/2012/12/man-ordered-held-for-refusing-to-testify-on-may-day-violence/; Kim Murphy, *Anarchists Targeted After Seattle's Violent May Day Protests*, L.A. Times, Oct. 19, 2012, http://articles.latimes.com/2012/oct/19/nation/la-na-anarchists-grand-jury-20121020.

The public's right of access may be overcome if: (1) the government has a compelling interest; (2) there is a substantial probability that the interest will be harmed by disclosure; and (3) there are no adequate alternatives to maintaining the filings under seal. *See id.* at 1028. Although the government has a compelling interest in favor of grand jury secrecy, the transcript and filings related to Duran's September 26, 2012 confinement status hearing and the February 2013 filings related to his request for release are also of considerable public importance because Duran had been confined for approximately five months and there was the potential for Duran to be confined for up to eighteen months. The public also had an interest in the conditions under which Duran was held in custody.

For this category of documents, in this case, redaction is an adequate alternative to closure, *see id.*, and it is preferred given our strong tradition of open court proceedings. Redactions shall be limited to references to the grand jury investigation and should sweep no more broadly than necessary to protect grand jury secrets.

Although redaction is an adequate alternative in Duran's case, we emphasize that, under different circumstances, it may not be. For example, even seemingly innocuous information can be so entangled with secrets that redaction will not be effective. *Cf. Mohamed v. Jeppesen Dataplan, Inc.*, 614 F.3d 1070, 1082 (9th Cir. 2010) (en banc) ("[T]here will be occasions when, as a practical matter, secret and nonsecret information cannot be separated."). Alternatively, if the record is sufficiently voluminous, the consequences of disclosure sufficiently grave or the risks of accidental disclosure sufficiently great, the balance may well tip in favor of keeping records sealed. These considerations are not

exhaustive, but are examples of the considerations that may be relevant when conducting the necessary case-by-case balancing of interests.

We remand for the district court to unseal those portions of the transcript and filings related to Duran's confinement status hearing and the filings related to his request for release, subject to any redactions the government may propose and the district court finds appropriate in light of the principles outlined in this opinion.

### C. The public's right of access to the district court filings related to *The Stranger*'s motion to unseal Duran's case file

The final category of documents sought by *The Stranger* includes all district court filings related to *The Stranger*'s motion to unseal Duran's contempt file.[19]

Motions to unseal judicial proceedings and orders ruling on those motions have historically been open to the public, at least during recent history. *See, e.g.*, *Copley*, 518 F.3d at 1025 (describing motion to unseal and order by the district court ruling on the motion); *Kamakana v. City & Cnty. of Honolulu*, 447 F.3d 1172, 1176–78 (9th Cir. 2006) (same); *Times Mirror*, 873 F.2d at 1211–12 (same). Logic also dictates that the record of these types of proceedings should

---

[19] These documents include *The Stranger*'s motion to unseal Duran's contempt file, Duran's declaration in support of unsealing, Duran's attorney's declaration in support of unsealing, the government's opposition to unsealing, *The Stranger*'s reply, the district court's order granting in part and denying in part *The Stranger*'s motion to unseal, *The Stranger*'s motion for reconsideration, and the district court's order denying *The Stranger*'s motion for reconsideration.

be open to the public because the very issue at hand is whether the public should be excluded or included in various types of judicial proceedings. The public should be permitted to observe, monitor, and participate in this type of dialogue, or at least review it after the fact. *See Copley*, 518 F.3d at 1027 ("[L]ogic requires that at least *part* of these hearings be open to the public, because one of their purposes is to give the public an opportunity to be heard."). In a similar case involving motions to unseal proceedings held ancillary to a grand jury investigation, the D.C. Circuit held that the district court's hearings on the motions to unseal, and its orders regarding those motions, should be unsealed. *See In re Motions of Dow Jones & Co.*, 142 F.3d 496, 501 n.8 (D.C. Cir. 1998) ("These motions [were] related to the grand jury but obviously revealed nothing about its workings."). Application of the experience and logic test compels the conclusion that the public has a qualified right of access under the First Amendment to the district court record related to *The Stranger*'s motion to unseal Duran's contempt file.

All of the filings related to *The Stranger*'s motion to unseal Duran's contempt file should be open to the public unless the public's right of access is overcome by a compelling government interest. *See Copley*, 518 F.3d at 1026; *see also Globe Newspaper Co. v. Superior Court*, 457 U.S. 596, 606–07 (1982). The public's interest in access to judicial filings related to the motion to unseal outweighs the government's interest because these filings do not jeopardize grand jury secrecy in this case. There is no substantial probability that the government's interest will be harmed by disclosure of the filings related to *The Stranger*'s motion to unseal. *See Copley*, 518 F.3d at 1028. Even if there were, the general presumption in favor of open judicial

proceedings requires that the district court consider alternatives to closure, such as redaction. *See id.* at 1029.

Many of the filings sought by *The Stranger* were filed in the publically accessible mandamus action. The government had notice of these filings and has not moved to seal the mandamus record since the petition for writ of mandamus was filed, over a year ago. The government even argues to this court that because *The Stranger* has access to many of the filings it seeks to have unsealed, and *The Stranger* is not subject to the secrecy obligation of Rule 6(e), this appeal is moot. We disagree. This appeal is not moot because the entire contempt file is effectively invisible to the public as long as the docket is sealed, but we acknowledge that the relief we order today is limited because most of the records sought by *The Stranger* would have been available in the mandamus action for over a year, if the public had known where to look for them.

We remand for the district court to unseal the portion of Duran's contempt file containing the filings related to *The Stranger*'s motion to unseal. The government shall be given an opportunity to propose redactions before these filings are unsealed.

## D.  The documents filed in this appeal

Shortly before oral argument before our panel, on January 2, 2014, *The Stranger* filed a motion to unseal the record in this appeal. The government opposed the motion, but it did not request that oral argument be closed. Oral argument was held on February 5, 2014, and it was open to the public. Since the argument, the government has not taken the position that grand jury secrets were compromised in any

way.   This appeal does not concern the grand jury investigation, the existence of which is now well known by the public.  This appeal is about the public's right of access to judicial proceedings and documents; fundamentally it is a case about the public's First Amendment and common law rights of access, not about the May Day grand jury investigation.

Experience and logic weigh in favor of unsealing the appellate filings regarding *The Stranger*'s motion to unseal Duran's contempt file because the public should be given an opportunity to engage in and follow the dialogue concerning whether the public will be excluded from a proceeding.  *See Copley*, 518 F.3d at 1027; *see also, e.g.*, *Press-Enterprise II*, 478 U.S. at 13 (finding qualified First Amendment right of access to preliminary hearings in California in an unsealed opinion); *Special Grand Jury*, 674 F.2d at 781 (finding limited public right of access to ministerial records of the grand jury in an unsealed opinion).

We see no possibility that unsealing the appellate docket, the parties' appellate briefs, and the motions filed in this appeal will harm a compelling government interest.  *See Copley*, 518 F.3d at 1026.  Nevertheless, the government shall be permitted to file suggested redactions consistent with this opinion by September 19, 2014.  The appellate record will not be unsealed until all issues regarding redaction are resolved.

## CONCLUSION

For the reasons discussed above, we **DISMISS** the petition for writ of mandamus and rule on *The Stranger*'s appeal.

We **AFFIRM** the district court's decision to maintain under seal: (1) the transcript and filings related to Duran's motion to quash; (2) the portion of the transcript of Duran's contempt proceeding during which matters occurring before the grand jury were discussed; and (3) the motion to hold Duran in contempt.

We **REMAND** for the district court to unseal the electronic and paper docket for the documents filed in Duran's contempt proceeding. *The Stranger*'s July 12, 2013 motion to unseal the district court docket is **MOOT**.

We **REVERSE** the district court's decision to maintain under seal the order holding Duran in contempt and ordering him confined and we **REMAND** for the district court to unseal that order.

We **REMAND** so the district court may unseal the transcript and the filings related to Duran's confinement status hearing, the filings related to Duran's request for release, and the district court filings related to *The Stranger*'s motion to unseal, subject to any redactions it may deem necessary and that are in accord with this opinion.

*The Stranger*'s January 2, 2014 motion to unseal the file in this appeal is **GRANTED**, subject to possible redactions. The government may suggest redactions of the appellate record consistent with this opinion by September 19, 2014. If the government does request redactions, no part of the file for this appeal shall be unsealed until the court has ruled on the request.

Each party shall bear its own costs on appeal.

**AFFIRMED in part, REVERSED in part, and REMANDED.**